OPINION OF THE COURT
Ira Gammerman, J.
In this action on an account stated and for services rendered, defendants assert that plaintiff, a corporation dissolved by proclamation for tax delinquency, lacks the capacity to enforce an obligation arising after dissolution.
The plaintiff corporation was duly incorporated in 1970. In 1974, it was dissolved by proclamation for tax delinquency and has never been revived or reinstated. Despite the dissolution, plaintiff carried on its affairs as usual, exercising its corporate powers, entering into leases, maintaining bank accounts, filing Federal tax returns, withholding taxes from employees, and filing subsequent State tax returns. After the proclamation of dissolution, services were rendered to defendants in 1975 and 1976, with billings in excess of $32,000. Approximately 80% of this account was satisfied by defendants. Upon defendants’ refusal to competely discharge the balance, plaintiff instituted this action. Defendants answered with a general denial, but *594 amended this answer in the course of trial, adding the affirmative defense of corporate incapacity. Defendants assert that a corporation dissolved for tax delinquency may not avail itself of the benefits of the judicial process to collect debts, while simultaneously seeking to circumvent payment of State corporate taxes.
The resolution of this question lies within a web of three interrelated and much-amended statutory schemes. Dissolution of tax-delinquent corporations by proclamation is effectuated by the Secretary of State in accordance with the provisions of section 203-a of the Tax Law. The tax statute refers to two other statutes, the General Corporation Law and the Business Corporation Law. Subdivision 10 of section 203-a of the Tax Law provides: "The provisions of section twenty-nine of the general corporation law shall apply to any corporation heretofore or hereafter dissolved under this section except for those corporations governed by the business corporation law as to which section one thousand nine of such law shall apply.” The exception consumes the rule, since the overwhelming majority of stock corporations and corporations formed for profit are governed by the Business Corporation Law. The sweeping scope of that statute is contained in subdivision (a) of section 103 of the Business Corporation Law: "This chapter applies to every domestic corporation and to every foreign corporation which is authorized or does business in this state.” Reference to section 1009 of the Business Corporation Law reveals that business corporations dissolved for tax delinquency pursuant to section 203-a of the Tax Law are to conduct their affairs in accordance with section 1005 of the Business Corporation Law (procedure after dissolution), section 1006 (corporate action and survival of remedies after dissolution), section 1007 (notice to creditors; filing or barring of claims), and section 1008 (jurisdiction of Supreme Court to supervise dissolution and liquidation). Thus, the answer to the issue raised by defendants, the capacity of the corporate plaintiff Expomotion to sue, lies within these provisions of the Business Corporation Law.
Had the obligation in question arisen prior to dissolution, the provisions of subdivision (b) of section 1006 of the Business Corporation Law would be dispositive. That section provides that: "The dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing or any *595 liability incurred before such dissolution, except as provided in sections 1007 (Notice to creditors; filing or barring claims) or section 1008 (Jurisdiction of supreme court to supervise dissolution and liquidation).” (Emphasis added.) The statute is silent, however, with respect to claims accruing after dissolution. Clearly enforceable are those claims arising after dissolution, but based on contracts or events prior to dissolution (Stentor Elec. Mfg. Co. v Klaxon Co., 115 F2d 268, revd on other grounds 313 US 487). Transactions necessary and appropriate for winding up corporate affairs are similarly enforceable by and against the corporation pursuant to section 1006 (subd [a], par [4]) of the Business Corporation Law.
The conduct of entirely new business by the dissolved corporation is proscribed by section 1005 (subd [a], par [1]) of the Business Corporation Law which provides: "The corporation shall carry on no business except for the purpose of winding up its affairs.” However, this section of the statute cannot be interpreted as an absolute bar to litigation, since another section of the Business Corporation Law (§ 203, subd [a]) estops both plaintiffs and defendants from asserting that the dissolved corporation lacked power to enter into the transaction.
"Defense of ultra vires, (a) No act of a corporation and no transfer of real or personal property to or by a corporation, otherwise lawful, shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such transfer, but such lack of capacity may be asserted” by:
(1) Shareholder’s suit for injunctive relief;
(2) Actions against former officers;
(3) Actions by Attorney-General for dissolution or injunctive relief.
Furthermore, the Court of Appeals has acknowledged the doctrine of de facto corporations, ruling that where a corporation dissolved by expiration of its period of duration "carries on its affairs and exercises corporate powers as before, it is a de facto corporation * * * and ordinarily no one but the state may question its corporate existence.” (Garzo v Maid of Mist Steamboat Co., 303 NY 516, 524.)
The question of whether a corporation dissolved by proclamation for tax delinquency should be denied this de facto status with respect to obligations arising after dissolution has *596 not been definitely addressed. The main precedent cited by defendant is inapposite. In Delpad Realty Corp. v Rapport (119 NYS2d 675), it was held that the corporate right to sue or be sued after dissolution is expressly limited to obligations in existence at the time of dissolution, and that a corporation dissolved in 1939 may not sue on an agreement contracted in 1950 (Delpad Realty Corp. v Rapport, supra, at p 676). However, that ruling was based on a precursor statutory scheme which applies section 29 of the General Corporation Law to any tax delinquent corporation. The passage of section 1009 of the Business Corporation Law and the amendment of section 203-a of the Tax Law removed the rationale of Delpad (supra).
The revised statutory framework was applied in Vinlis Constr. Co. v Roreck (67 Misc 2d 942, affd 43 AD2d 911, app dsmd in part, den in part 35 NY2d 715). However, the court’s holding in Vinlis (supra) — that dissolution does not affect the capacity to sue — is not dispositive of the issue presented here, since dissolution in that case occurred after the suit was initiated (but before the matter proceeded to judgment). Somewhat more analogous to the instant case is A. A. Sutain, Ltd. v Montgomery Ward & Co. (22 AD2d 607, affd 17 NY2d 776). In Sutain (supra) the delinquent corporation was dissolved in 1956 and reinstated in 1963. In the interim, the disputed obligation was incurred and suit to enforce it was instituted. The court ruled that the defendant was estopped from questioning plaintiff’s existence and capacity on two grounds: first, that plaintiff continued to carry on its corporate affairs after dissolution, and therefore enjoyed a de facto existence; and second, that having entered a general denial and proceeded to trial on the merits, defendant had waived its right to plead an essentially affirmative defense (A. A. Sutain, Ltd. v Montgomery Ward & Co., 22 AD2d, supra, at p 610). Both rationales rested to a substantial extent on the particular facts of the case; proof was offered that dissolution resulted from a clerical error by the Secretary of State, rather than an actual tax delinquency; and the plaintiff corporation had been reinstated prior to trial.
In the instant matter, plaintiff was, in fact, delinquent and has not been reinstated to date. Nevertheless, the better rule, espoused by the authors of a leading treatise, would permit plaintiff’s claim here, in the absence of any prejudice to defendant. "Since dissolution does not terminate the existence of the corporation under the BCL, it would seem that the most *597 equitable and consistent approach would be to hold that the corporation may sue or be sued on a contract made in violation of § 1005(a), but that the other party, if he was ignorant of the dissolution, may resist specific enforcement of the contract, or sue directly the person who made the contract on the corporation’s behalf, upon showing that his rights or liabilities under the contract would be substantially affected by the fact that the corporation was dissolved.” (4 White, New York Corporations [13th ed], § 1006.08.)
There is no indication here that defendants’ rights or liabilities were affected in any material way by plaintiff’s corporate dissolution. Indeed, the strong implication to be drawn is that defendants, having discharged almost all of their outstanding accounts with plaintiff Expomotion (all of which arose after dissolution) are grasping at straws to avoid final payment. Under such circumstances, defendants’ obligation to pay for services they received cannot be avoided because of plaintiff’s alleged incapacity to sue.
Defendants have also raised several factual disputes with respect to a number of different billings. With respect to Invoice No. 1190, defendants claim a double billing for items previously included on Invoice No. 1175. However, on cross-examination, defendants’ witness admitted that defendants themselves ordered the duplication reflected on Invoice No. 1190. With respect to Invoice No. 1240, defendants claim that plaintiff agreed to reduce the amount charged by $773. Plaintiff’s witness testified, however, that the agreed upon adjustment was actually $300, which amount was credited to defendants’ account. The court resolves both factual disputes in favor of plaintiff.
The clerk is directed to enter judgment in favor of the plaintiff against defendant Heidepriem-Santandrea, Inc. for $4,191.80, with interest from July 22, 1977, and against defendant Theodore Heidepriem for $2,561.50, with interest from January 1, 1976.