In the Matter of VIOLA LEWIS, Individually and as Secretary-Treasurer of 172 West 130th Street Tenants Association, Appellants, v ALLEN G. SCHWARTZ, as Corporation Counsel of the City of New York, et al., Respondents.

First Department, August 21, 1986

### APPEARANCES OF COUNSEL

*Dorothy E. Roberts* of counsel *(Richard Rivera* with her on the brief; *David W. Weschler,* attorney), for appellants.

*Pamela Seider Dolgow* of counsel *(Fay Leoussis* with her on the brief; *Frederick A. O Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

### OPINION OF THE COURT

MURPHY, P. J.

Twenty-one ninety-seven 7th Avenue (also known as 172 West 130th Street) is a residential building with two commercial units. Until April 1981 it was owned by the 2197 7th Avenue Corporation whose sole shareholder and principal officer was Parker Morton. Morton let the property deteriorate until, in May 1980, conditions warranted appointment of a tenant administrator pursuant to RPAPL article 7-A. Morton was also neglectful of his real estate tax obligations and, on April 17, 1981, the city acquired title to the building following an in rem tax foreclosure proceeding. Thereafter, the tenants, who had made substantial improvements in the building since the tenant administrator's appointment, applied for admission to the city's tenant interim leasing program with the eventual objective of purchasing the building from the city. The record shows that the tenant's application would have been approved but for the city's decision here at issue to return the building to the 2197 7th Avenue Corporation.

Morton was no more diligent about paying his corporation's franchise taxes than he had been about maintaining the premises or paying his real estate taxes. As a result, on June 24, 1981, 2197 7th Avenue's corporate charter was forfeited and the corporation was dissolved by proclamation of the Secretary of State.

Despite the corporate dissolution, Morton sought to reacquire title to 2197 7th Avenue within the four-month mandatory release period provided for in Administrative Code of the City of New York § D17-25.0 (f). On August 17, 1981, the last day of the mandatory release period, Morton, on behalf of the

dissolved corporation, filed an application for release of the property. He did not disclose the corporation's dissolution. The application was approved by the city on the condition that Morton pay some $34,000 in back real estate taxes by November 30, 1981. As he apparently did not possess so large a sum, Morton attempted to effect the sale of the building (to which it will be recalled that the city still held title) for $65,000 to one Mitchell; $10,000 was to be paid in cash with the corporation taking back a long-term purchase-money mortgage for the remainder. Having negotiated this sale, Morton approached Israel Weinstock who alleges that he agreed to pay the outstanding tax obligation in exchange for the corporation's ownership, a disputed matter which is the subject of separate litigation, a check for $34,260.08 was drawn by Weinstock on his account on November 30, 1981 and delivered to the city in satisfaction of 2197 7th Avenue's unpaid real estate taxes.

Prior to Weinstock's payment, however, tenant petitioners commenced this proceeding to enjoin the city's release of the property. Citing Administrative Code § D17-25.0 (f), they maintained that the city was under a duty to pass upon an applicant's eligibility to reacquire its foreclosed property and that this duty was not properly discharged when the release application of a dissolved corporation such as 2197 7th Avenue was granted. Special Term agreed with petitioners, expressly finding, in its October 4, 1983 decision, that "respondent corporation, not yet legally reinstated, was not eligible to redeem the subject property within the meaning of New York City Administrative Code § D11-25.0 (f)." The court also observed: "[I]n attempting to redeem and then sell the subject property, [the corporation] was not merely winding up its affairs for purposes of collecting and distributing its assets * * * Moreover, in the case at bar, it appears that respondent corporation resorted to conducting new business vis-a-vis Mitchell and Weinstock in attempting to redeem and sell the subject parcel following its involuntary dissolution." The matter was remanded to the city for a final determination not inconsistent with the court's decision and the preliminary injunction against release of the property previously granted by Justice Price on December 1, 1981 was continued pending the city's final disposition of the release application.

By notice of motion, dated November 22, 1983, the city moved for reargument and renewal. In doing so it did not challenge the court's finding that 2197 7th Avenue Corporation, while dissolved, was ineligible to redeem the subject

property. Rather, as the supporting affidavit shows, renewal was sought on the singular ground that previously unavailable evidence demonstrated that 2197 7th Avenue's dissolution had been annulled as of June 14, 1983, following payment of the outstanding franchise tax. The city cited Tax Law § 203-a (7) for the proposition that once a corporate dissolution is annulled the corporation "shall thereupon have such corporate powers, rights, duties and obligations as it had on the date of publication of the proclamation [of dissolution], with the same force and effect as if such proclamation had not been made or published." Restoration of 2197 7th Avenue Corporation's "corporate powers, rights, duties and obligations" as of June 24, 1981 (the date of the proclamation of dissolution), the city urged, retroactively validated the corporation's August 17, 1981 release application.

Special Term granted reargument based on the newly adduced evidence of corporate reinstatement and went on to hold in favor of the city and dismiss the tenant's petition. Though it reached this result, the court did not alter any of its previous findings regarding the dissolved corporation's eligibility to redeem its foreclosed property. Instead, the decision turned exclusively upon the court's understanding of what rights the corporation had at the time of dissolution and what rights were consequently restored upon reinstatement. The court observed: "Under these statutes [Administrative Code § D17-25.0 providing for a four-month mandatory release period, and Tax Law § 203-a (7) as quoted above], 2197 7th Avenue Corp. is restored to whatever rights it had as of June, 1981, the time of its dissolution. Accordingly, *the corporation had, and still has,* the right to redeem the property by paying the back taxes" (125 Misc 2d 205, 207; emphasis added). The present appeal by the tenant petitioners followed.

In our view, the court was initially correct when it found that the dissolved corporation was ineligible to apply for the release of its former property. The tenant's petition ought to have been granted on this basis because Tax Law § 203-a (7) cannot be construed as it was on reargument to allow the exercise of a right beyond the statutorily allotted time period.

It is not at issue whether there exists a general right on the part of corporations or, for that matter individuals, to apply for the release of property lost in in rem foreclosure proceedings; that much can be conceded. Rather, the initial question is whether restoration pursuant to Tax Law § 203-a (7), of a corporation's right to make a release application entails resto-

ration of the time within which the right may be exercised as to a specific property. Special Term, apparently conceiving of the right as encompassing the time for its exercise, ruled that 2197 7th Avenue had an enduring right to seek the mandatory release of its former property. The failure of Special Term to observe the crucial distinction between a right and its timely exercise, however, leads to consequences which are at variance with Administrative Code § D17-25.0 (f) and are so impracticable and inequitable as to approach the absurd.

If this court were to affirm Special Term's decision, it would have to adopt a reading of Tax Law § 203-a (7) indefinitely extending a dissolved corporation's time to seek release of foreclosed property for as long as the possibility of corporate revivification exists, a theoretically limitless period. Thus, if 50 years after dissolution a corporation were to pay its franchise tax it would, to paraphrase Special Term, still have the right (that it had at the time of dissolution) to redeem the property by paying the back taxes. Presumably, during the 50 years or whatever period intervened between dissolution and reinstatement, the city would be obliged to retain the property or at the very least any funds received from its condemnation (see, Administrative Code § D17-25.0 [f]) so as not to impair the dissolved corporation's apparently undying "equity" in its late asset.

It is precisely to avoid such a circumstance and to enable the city to unburden itself of properties acquired in in rem tax foreclosure proceedings that the Administrative Code § D17-25.0 (f) limits the mandatory release period to four months. We see no reason to read Tax Law § 203-a (7) so as to nullify this essential limitation. Statutory provisions may not be so readily construed to conflict with each other when alternative interpretations preserve the integrity of each provision at issue and prevent the sort of untoward consequences that would obtain were Special Term's reading of the Tax Law to be adopted.

Indeed, Special Term's construction of Tax Law § 203-a (7) so as to toll the running of the redemption period indefinitely is not only impracticable, forcing the city, at least in theory, to retain properties or funds derived from their condemnation in perpetuity, it also works a gross inequity. One may inquire with good cause why a corporation that has diligently paid its franchise tax should be afforded less time to come up with funds to reacquire lost property than a corporation that has been derelict in meeting its corporate tax obligation. The rule

espoused by Special Term in fact creates a strong incentive to a corporation with property subject to in rem foreclosure to forfeit its charter so as to preserve its "equity" in the property for as long as it takes to finance release. Clearly, this was not the result intended by the Legislature when it enacted Tax Law § 203-a (7). That provision is better understood as an inducement to prompt payment of franchise taxes so that those rights restored to the corporation can be exercised before the time for doing so lapses.

Although it asks that Special Term's order and judgment be affirmed, the city, perhaps in recognition of the fundamentally untenable reading of the statute proposed by Special Term, does not expressly argue that the right to apply for mandatory release may be exercised as to specific property whenever the corporation is revived. Instead, the city urges that in this case the right *was* exercised within the mandatory redemption period and advances two theories to support this proposition. First, the city maintains that Tax Law § 203-a (7), though it may not toll the statutory redemption period, does operate, upon the corporation's revival, to validate retroactively otherwise unauthorized corporate actions during the period of dissolution. Alternatively, the city proposes that a corporation's eligibility to apply for release of its property is unaffected by its involuntary dissolution.

The retroactivity theory is hardly an improvement upon Special Term's view of the case. Even if it is granted, arguendo, that 2197 7th Avenue Corporation's release application was retroactively validated by the corporate restoration, this does not avoid the unacceptable consequences following from Special Term's reading of Tax Law § 203-a (7).

According to the city, a dissolved corporation, even if initially ineligible to apply for the release of its former property, may nevertheless preserve its right to mandatory release by taking the simple step of filing a timely application therefor. This is because the city understands Tax Law § 203-a (7) to have the effect, upon corporate reinstatement, of validating all corporate actions taken since the proclamation of dissolution, including the application for release of foreclosed property. Once the mandatory release application is retroactively validated the city must, in keeping with its reading of the Tax Law, authorize payment of the unpaid taxes and, upon their payment, release of the subject property. Thus, it is the application and nothing more which preserves the dissolved corporation's right to seek mandatory release under the city's

retroactive validation theory. It is astonishing that in its apparent eagerness to release one property the city should embrace a position which, if accepted, will prevent it indefinitely from disposing of any property acquired in in rem tax proceedings where a dissolved corporation has preserved its rights by taking the minimal step of filing a release application within the mandatory release period.

It may perhaps be objected that it is not the timely application alone which justifies the incredible indulgence with which the city proposes to treat double delinquent taxpayers, but the additional fact of the payment of the unpaid real estate taxes. Payment of tax arrearages, however, is not the first consideration. When a release application is made, the initial question is not one of payment but whether the applicant is eligible to make payment. Clearly, payment may not be received from an ineligible applicant. The city in its resort to the retroactive validation theory must agree that the applicant is, by hypothesis, initially ineligible, otherwise the theory would be wholly unnecessary. It follows that the application may not be approved and payment may not be authorized. If payment may not be authorized, neither may it be considered as a factor warranting, in effect, the indefinite extension of the mandatory release period beyond the four months allotted by the Administrative Code.

As noted above, the city may not approve a release application where resort to the retroactive validation theory is necessary. Yet, while the possibility of validation exists, the city may not reject the application either. To do so would be to invite civil liability for impairing the applicant's right to seek mandatory release. The city then can take no action on a mandatory release application until such time as the application is in fact validated and can, therefore, be safely approved. The duty, pursuant to Administrative Code § D17-25.0 (f), to pass upon an applicant's eligibility is, however, not a contingent one. Its performance does not turn upon the existence of circumstances requiring the application's approval. Indeed, if there is a duty, it must be performed, it cannot remain suspended until, if ever, it is rendered academic. Unless the city is to be excused from its duty to pass upon an applicant's eligibility, the retroactive validation theory must be abandoned.

We turn now to the last ground offered by the city to support the dismissal of the within petition, namely, that 2197 7th Avenue's eligibility to apply for the mandatory release of

its former property was not impaired by its involuntary dissolution. In this connection it is urged that, although 2197 7th Avenue while dissolved could "carry on no business except for the purpose of winding up its affairs" (Business Corporation Law § 1005 [a] [1]), the right to apply for release of the subject building was an "asset" in the form of an option to "redeem" which could be exercised in the course of winding up business pursuant to Business Corporation Law § 1005 (a) (2).

This novel proposition is rather tenuous as a matter of law, but even supposing it to be valid in theory it would not render the postdissolution activities of Parker Morton on behalf of 2197 7th Avenue Corporation benign.

Although the city persists in referring to Administrative Code § D17-25.0 as a "redemption" provision, such characterization is, at best, imprecise. Redemption, as used in the present context, properly refers to the right of the owner to have his property withdrawn from in rem foreclosure prior to preparation of the final judgment of foreclosure by paying the unpaid taxes. *(See,* Administrative Code § D17-7.0). The right of redemption is, of course, premised upon the owner's continuing equity in the property which is cut off by the final judgment vesting title in the city in fee simple absolute (Administrative Code § D17-12.0 [b]; *Old Dutch Lands v City of New York,* 55 Misc 2d 384, *mod* 32 AD2d 649, *affd* 26 NY2d 984; *see also, Matter of City of New York [Scalere],* 25 AD2d 37, *affd* 23 NY2d 912). Thereafter, any right the former owner has to reacquire the property is not by virtue of a continuing equitable interest but by reason of the statute's release provision *(i.e.,* Administrative Code § D17-25.0). Because invocation of that provision assumes that all prior right, title, interest, claim, lien or equity of redemption in or upon the subject property has been "barred and forever foreclosed" (Administrative Code § D17-12.0 [b]), it is not properly viewed as a redemption statute but one for the reconveyance of property to those who formerly had an interest therein. *(Old Dutch Lands v City of New York, supra,* at p 386.) It reflects the Legislature's desire to afford those who have lost their property in in rem foreclosure proceedings a grace period for the property's reacquisition but does not and cannot perpetuate or revive property interests that have already been terminated pursuant to Administrative Code § D17-12.0 (b). Thus, once title to 2197 7th Avenue vested in the city on April 17, 1981 the property ceased to be a corporate asset. Any equity the

corporation had in the property was "barred and forever foreclosed" from that date. It is then somewhat difficult to understand how the city construes 2197 7th Avenue's release application as an attempt to "preserve its only asset" in the course of the postdissolution windup of its affairs. Indeed, having lost its only asset, 2197 7th Avenue Corporation had no assets to collect, much less preserve.

The city nevertheless maintains that even if the building was no longer an asset of 2197 7th Avenue Corporation, the right to apply for its "redemption" was. This, however, merely begs the question which is whether as a matter of law an involuntarily dissolved corporation does have the right to apply for release pursuant to Administrative Code § D17-25.0.

We see no good reason to hold that the grace period created by Administrative Code § D17-25.0 bestows upon a dissolved corporation an "asset" in the form of a right to apply for mandatory release. This is not a case where the dissolved corporation in concluding its affairs seeks to exercise a valuable, possibly assignable, option incident to a contract supported by consideration which was entered into prior to dissolution. (See, Bowditch v 57 Laight St. Corp., 111 Misc 2d 255.) Nor does it present the sort of equitable considerations that arise when the lack of corporate status is used to disavow obligations whose existence is not otherwise disputed and whose avoidance would result in unjust enrichment. (See, e.g., A. A. Sutain, Ltd. v Montgomery Ward & Co., 22 AD2d 607; Expomotion, Ltd. v Heidepriem-Santandrea, Inc., 101 Misc 2d 593.) The city had no contractual obligation or history of dealings with 2197 7th Avenue Corporation that made it inequitable for it to question the corporation's status to seek release. To the contrary, the city was under an affirmative obligation to inquire into the corporation's eligibility.

The "right" at issue does not arise by virtue of a surviving property interest or contractual obligation; it is purely the product of legislative grace. This being the case, there exists no rationale to count it among the "assets" of an involuntarily dissolved corporation. A corporation which has forfeited its charter and been dissolved by proclamation cannot claim the same right to carry on as one which has duly complied with those obligations necessary to the preservation of corporate status. The objective of corporate dissolution is the eventual liquidation of corporate assets. This goal is not facilitated by granting the dissolved corporation the right to reacquire property which has been definitively lost, and it is most

unlikely that the Legislature intended such a result when it enacted Administrative Code § D17-25.0 (f). The predictable consequence of recognizing such a right in a dissolved corporation is the unnecessary prolongation of the dissolution while the dissolved corporation attempts to liquidate the reacquired asset.

Yet, even if it were concluded that the reacquisition, as opposed to collection, of assets can somehow be reconciled with the objective of corporate dissolution, there would still remain the factual question as to whether the reacquisition and disposition thereafter of an asset was accomplished in circumstances consistent with the corporation's eventual dissolution. As Special Term correctly observed, the actions of Parker Morton on behalf of 2197 7th Avenue Corporation preparatory to the reacquisition of the subject property do not indicate any intention to dissolve the corporation. They show instead that Weinstock's financing of the reacquisition was undertaken on the supposition that the corporation would continue on as a long-term mortgage holder.

The city's duty to pass upon the eligibility of an applicant should not, however, entail extensive investigation into the intentions of corporate principals regarding the future of the dissolved corporation. The fact of a corporation's dissolution, readily ascertainable from the Secretary of State, should be sufficient to warrant rejection of a release application on the ground of the applicant's ineligibility.

Not only does such action promote the expeditious windup of the dissolved corporation's affairs, it alternatively encourages the prompt payment of long-overdue franchise taxes. It must be supposed that the involuntary dissolution of a corporation is meant to impose a disability. No disability obtains when a corporation is allowed to reacquire property and, as in the present case, to conduct business as if the dissolution had never occurred. If a corporation wishes to be revived and to reacquire its former property, it can take the simple step of paying its franchise taxes in time to exercise its right as an eligible applicant to seek the property's release. It should be noted that 2197 7th Avenue Corporation not only failed to seek annulment of its dissolution during the four-month mandatory release period, it additionally failed to do so within the ensuing 20-month discretionary release period. The city's apparent disinclination to reject the release application of a dissolved corporation only encourages such complacency.

Understandably, the city wishes to obtain payment of long-overdue real estate taxes. Acceptance of payment is, however, conditioned upon performance by the city of its duty to pass upon the applicant's eligibility. That duty cannot be either nullified or indefinitely postponed by means of a strained reading of Tax Law § 203-a (7). Nor can it be performed in so cursory a fashion as to omit consideration of whether a corporate applicant retains the right to carry on the business activities for which it received its franchise because if, in fact, the corporation has been dissolved, the reacquisition of property (as distinguished from its "collection") is not consistent with the injunction of Business Corporation Law § 1005 (a) (1) that the dissolved corporation "shall carry on no business except for the purpose of winding up its affairs." The right to reacquire lost property pursuant to Administrative Code § D17-25.0 (f) does not flow to a dissolved corporation.

Aside from these legal considerations, it is worth commenting that the facilitation of real estate tax payments by a delinquent property owner is not the sole policy guiding the court's decision of this matter. There are competing policy considerations, among them encouraging the expeditious windup of a dissolved corporation or, if the corporation is to continue, its prompt payment of overdue franchise taxes. There is no reason to invite controversies such as the one at bar, arising as a result of a corporation's ambiguous status, by allowing a disenfranchised entity to reacquire property and to engage in all the business transactions incident thereto.

Finally, it should not be overlooked that the practical consequence of dismissing the within petition will be to permit 2197 7th Avenue Corporation to regain the subject building. It is a matter of record that the corporation has not only repeatedly failed to meet its tax obligations, but has let both the building and services to its tenants deteriorate to the point where dangerous conditions necessitated the appointment of a tenant administrator. If the corporation's lamentable history of unmitigated incompetence is any indication, the tenants' thus far successful efforts to properly manage and maintain the building will ultimately be frustrated and it is not unlikely that the building will find its way back to the city in deteriorated condition. This is precisely the result that the city sought to avoid when the Board of Estimate adopted its resolution of March 22, 1979 (Cal No. 178) and pursuant thereto started the tenant interim leasing program. That the policy enunciated in this resolution should be frustrated is not

merely regrettable as Special Term observed, it is unnecessary and is sustainable only upon a construction of the law evincing the most exaggerated and misplaced solicitude for the rights of an involuntarily dissolved corporation.

Accordingly, the order and judgment of the Supreme Court, New York County (Richard L. Price, J.), entered January 29, 1985 which, upon reargument, *inter alia,* dismissed the within petition seeking to enjoin the respondent Corporation Counsel from releasing the city's interest in premises located at 172 West 130th Street, should be reversed, on the law, and the petition reinstated and granted to the extent of enjoining the Corporation Counsel's release of the subject property until such time as the application of respondent 2197 7th Avenue Corporation is disposed of by the Corporation Counsel in a manner not inconsistent with the foregoing decision, without costs and without disbursements.

SANDLER, FEIN, MILONAS and ELLERIN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on January 29, 1985, unanimously reversed, on the law, without costs and without disbursements, and the petition reinstated and granted to the extent of enjoining the Corporation Counsel's release of the subject property until such time as the application of respondent 2197 7th Avenue Corporation is disposed of by the Corporation Counsel in a manner not inconsistent with the decision of this court's opinion herein.