**In re BLOCK 1524 CONSTRUCTION CORP., Debtor.**

**Bankruptcy No. 185–50249–260(CBD).**

United States Bankruptcy Court, E.D. New York.

Feb. 18, 1987.

George M. Hart, Staten Island, for debtor.

Hahn & Hessen, New York City, (Gil Backenroth, of counsel), for State Management Co.

New York City Law Dept. by Glenn Newman and Amy Moorin, New York City.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Chief Judge.

Debtor (hereinafter "debtor" or "Block 1524" where appropriate) and State Management Company ("State Management") seek an order compelling the City of New York ("City") to allow redemption and turnover of certain real property pursuant to 11 U.S.C. § 542(a) and accept payment of tax arrearages owed by the debtor to the City on the property.

The City, claiming that it acquired title to the property in fee simple absolute prior to the commencement of this case, opposed the motion on grounds that turnover is inappropriate because the debtor has no legal or equitable interest in the property.

## FACTS

Block 1524 is a construction corporation which purchased property in Richmond County known as Block 524, Lots 15, 17, 18, 24, 40 and 43. The purchase occurred during July, 1981. At that time, the City held tax liens against each of those lots with the exception of Lot 43. The liens had resulted from unsatisfied tax liabilities dating as far back as 1977. The tax liabilities remain unsatisfied and presently total approximately $50,000.

As a result of the continuing nature of the unsatisfied tax indebtedness, and before this bankruptcy case was filed, the City commenced an action to foreclose the

tax liens it held on the lots (the "liened lots") pursuant to the *in rem* tax foreclosure statute provided by the New York City Administrative Code Title D, § 17 ("City Code"). As required by the City Code, notice of the proceeding was sent to Block 1524 and notice of pendency of the action was filed in the Richmond County Clerk's office. During the succeeding two and one-half years, Block 1524 failed to interpose an answer in the foreclosure action and never exercised its right to redeem the property as provided by the City Code. Nevertheless, on February 1, 1984, Block 1524 contracted to sell all the liened lots except Lot 24 and also Lot 43, to State Management for $145,000.[1] On April 4, 1984 a final judgment was rendered in the foreclosure action awarding title to the liened lots to the City. In accordance with the City Code, the City received a deed which conveyed title to the liened lots to the City in fee simple absolute. The deed was recorded on April 10, 1984. Thus, the City became the fee owner of Lots 15, 17, 18, 24 and 40.

On February 22, 1985, Block 1524 filed a petition for relief under Chapter 11 of the Bankruptcy Code. Subsequently, State Management moved in this court for an order converting the debtor's Chapter 11 to a Chapter 7 case, or in the alternative, dismissing the debtor's petition. At the hearing on the motion before this court, State Management informed the court of its interest in the lots which had been the subject of the contract for sale between it and the debtor prior to the institution of the bankruptcy proceedings. The motion was thereupon adjourned in order to give the parties an opportunity to negotiate a possible settlement of their differences.

Eventually the parties entered into a stipulation whereby it was agreed that the motion to dismiss or convert would be withdrawn, and that the property which was the subject of the contract would be sold by the debtor to State Management free and clear of all liens with the liens to attach to the proceeds. The stipulation further provided that in the event the funds available arising out of the sale were insufficient to pay all liens, the shortfall or difference would be paid by State Management. Although the court was informed by the parties that *in rem* proceedings arising out of tax liens affecting the lots had been instituted by the City of New York and were pending, the court was led to believe that the debtor still retained title to the lots. Under the circumstances, and inasmuch as it was contemplated by the stipulation that all liens were to be paid, this court signed an order on December 27, 1985 approving the stipulation and authorizing the debtor to proceed with the sale in accordance with the terms set forth above.

When the debtor sought to convey the property to State Management, it found that it was unable to do so because as has been noted, the City had previously acquired title to the property in April of 1984. The debtor thereupon on February 25, 1986, filed an application with the Board of Estimate of the City of New York requesting a release of title to the property.

The application for release of the property was filed pursuant to City Code provisions which allow a party who previously held an interest in property to seek a release of the City's interest in the same acquired by *tax foreclosure*.[2] The debtor's application for release was filed more than 21 months after the date of the City's

---

1. It should be noted that Lot 24 was not included in the property that was the subject of the contract for sale between Block 1524 and State Management. On July 28, 1984, the debtor applied for release of the City's interest with respect to Lot 24. Inasmuch as the application was made within the four month Mandatory Release period prescribed by the City Code, the debtor possessed a right to reconveyance of Lot 24 upon payment of the taxes. Consequently, the application was approved by the City upon condition that all taxes and charges owing on Lot 24 be paid within 30 days. Although the

debtor made an initial deposit, it failed to complete payment within the prescribed time period and approval for the release lapsed. While the debtor failed to make a similar application for release of the property described in its contract of sale with State Management during the Mandatory Release period, it did apply for a release during the Discretionary Release period.

2. The provisions of the City Code referred to are hereinafter addressed in greater length.

acquisition of the property. Because of the lapse of time and in accordance with the City Code, the grant of the release required the discretionary approval of the Board of Estimate.

Prior to the hearing of the application by the Board of Estimate, both the debtor and State Management moved this court to compel the release of the property and direct its turnover to the debtor. Having by that time been apprised fully of all of the facts concerning the status of the *in rem* proceedings and the position of the City of New York with respect to the property, this court declined to pass upon the motion pending final resolution by the Board of Estimate.

On October 19, 1986, the Board of Estimate unanimously denied debtor's application for release. While the debtor may have a right to appeal the Board of Estimate's determination pursuant to an Article 78 proceeding in state court, this course of action apparently has not been followed. Instead, the debtor and State Management moved before this court on November 5, 1986 for a Temporary Restraining Order enjoining the City of New York from disposing of the property. The City opposed the motion and on consent of the parties, the injunction was continued and decision reserved pending the submission of briefs. The same having been received and considered, this court makes the following decision.

## DISCUSSION

Relying on the Supreme Court's decision in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the debtor and State Management contend that 11 U.S.C. § 542 is controlling and turnover of the property is required. They further contend that under *Whiting Pools,* a debtor retains an equitable interest in property seized to satisfy a tax lien until such time as the property is sold to a bona fide purchaser at a tax sale. Since such a sale has not yet occurred, they contend that the debtor still retains an equitable interest in this property sufficient to compel turnover of the property pursuant to § 542.

Moreover, the debtor argues that if the property is not turned over to the estate, the debtor will be without funds to reorganize because the funds available for reorganization would arise out of a sale of the property to State Management. Since the value of the property and the contract purchase price is substantially greater than the amount of the tax liens, the City could be paid in full for the total aggregate tax indebtedness if the sale to State Management were consummated.

The City contends that the nature of a debtor's interest in property is determined by the law of the state where the property is located and that applying the relevant provisions of the City Code, the debtor has no legal or equitable interest in the property. Therefore, it further argues that the property is not an asset of the estate subject to turnover. In answer to the debtor's plea that if the sale is not consummated it will not have sufficient funds to reorganize, the City further alleges that release of the property in question is not essential to the reorganization because the debtor possesses additional property to satisfy the requirements of a plan.

Section 542 of the Bankruptcy Code outlines the authority of the bankruptcy court to order a turnover of property to the trustee or debtor-in-possession. It requires an entity in possession of property that the trustee may use, sell, or lease under § 363 to deliver that property to the trustee. Section 363(b) and (c) define property that the trustee may use, sell, or lease as being "property of the estate." Section 541(a) defines property of the estate to include, "the following property, wherever located (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case."

Consequently, the issue for determination is whether the debtor has retained any legal or equitable interest in the property subsequent to the City's acquisition of title pursuant to the judgment of foreclosure. If such interest exists, the property may constitute "property of the estate."

It is well established that the nature of a debtor's interest in property is determined by the law of the state wherein the property is located. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Accordingly, it is necessary to examine the nature and extent of the City's interest in the property.

*The City's Interest in the Property*

As previously noted, the City commenced an *in rem* tax foreclosure action against the property during November of 1981 pursuant to Title D of Chapter 17 of the City Code. This statute, entitled *"FORE-CLOSURE BY ACTION IN REM"* (*"In Rem* Statute"), governs the City's remedies for delinquent real property tax payments due on property located within New York City. The procedure for obtaining a foreclosure judgment is set forth in sections 4.0 through 12.0 of the City Code. These sections provide that an *in rem* tax foreclosure action may be commenced in the New York Supreme Court, in the county in which affected property is situated, and that a final judgment will be granted by the court upon a finding of compliance by the City with the provisions of the statute.

Specifically, the City Code provides that the City must: (1) maintain a systematic listing of the property subject to foreclosure; (2) publish a notice of intent to foreclose on the property; (3) mail a notice of intent to foreclose on all interested parties; and (4) provide an outline of the methods of intervention available to interested parties. If the procedure outlined above is followed, only two events will prevent the court from conveying ownership and title to the property foreclosed upon to the City. A party must either interpose an answer in the action or redeem the property by paying all taxes and charges due. If neither of these events occur, the court will enter a judgment awarding possession of the parcel to the City and direct the finance administrator to:

"... prepare, execute and cause to be recorded a *deed conveying to the City full and complete title to such lands* subject only to tax liens accrued or accruing subsequent to those contained in the list of delinquent taxes. Upon the execution of such deed, *the City shall be seized of an estate in fee simple absolute in such land and all persons, including the State of New York, infants, incompetents, absentees and non-residents who may have had any right, title, interest, claim, lien or equity of redemption in or upon such lands shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption,* except as otherwise provided in section D 17–25.0 of this title." D 17–12.0 (Emphasis added).

Thus, after the judgment of foreclosure was entered against the property on April 4, 1984, and the deed conveying title to the property to the City in fee simple absolute was recorded on April 10, 1984, the debtor lost all legal and equitable interest in the property. *See Lewis v. Schwartz,* 119 A.D.2d 116, 506 N.Y.S.2d 32, 37 (1st Dept. 1986).

As provided in section D17–12.0 of the City Code, section 25.0 of the *in rem* statute provides a procedure by which a party who had an interest in property subsequently acquired by the City through foreclosure may seek release of the City's interest. This section permits a party to file an application for release of the City's interest in property, any time up to two years from the date on which the deed by which the City acquired title to the property was recorded. If such an application is filed within four months of the City's acquisition of title the release "shall be granted" if the Corporation Counsel approves it as to form, timeliness and eligibility and the owner pays the outstanding tax and interest arrears within 60 days. ("Mandatory Release"). N.Y.C. Administrative Code D17–25.0(f). After the Mandatory Period has expired, a party has an additional twenty months within which to seek release of title to the property. During this twenty month period the Board of Estimate "may in its discretion" authorize the release of the City's interest. N.Y.C. Administrative Code § D17–25.0(g) ("Discretionary Release").

The cases construing § Dl7–25.0(g) have uniformly held that an application for release made during the Discretionary Release period "is not a right to which ... [the applicant] is entitled, as a matter of law." *Benigno v. City of New York*, 123 Misc.2d 375, 470 N.Y.S.2d 986 (1983). Instead, it is subject to the absolute discretion of the Board of Estimate. *See Lewis v. Schwartz, supra*, 506 N.Y.S.2d at 37. *See also Solomon v. City of New York*, 94 A.D.2d 283, 464 N.Y.S.2d 160 (1st Dept. 1983). Moreover, the Board of Estimate in making its decision is not required to make specific findings or explain its reasons for granting or denying the release. *Solomon, supra* at 287, 464 N.Y.S.2d 160. Finally, after foreclosure, "any right the former owner has to reacquire the property is not by virtue of a continuing equitable interest, but by reason of the statute's release provision." *Lewis v. Schwartz, supra*, 506 N.Y.S.2d at 37.

Indeed, § D17–25.0(f) and (g) do not afford the debtor any legal or equitable interest in the property. Section D17–25.0 is not a redemption statute. The term redemption refers to the right of a party claiming interest in property that is the subject of an *in rem* tax foreclosure action to have the property withdrawn from the proceeding by paying all taxes and charges due prior to the preparation of the final judgment of foreclosure. § D17–7.0. *See Lewis v. Schwartz, supra*, 506 N.Y.S.2d at 37. As the *Lewis* court explains, "The right of redemption is, of course, premised upon the owner's continuing equity in the property which is cut off by the final judgment vesting title in the City in fee simple absolute." *Id.* Section D17–25.0 is merely a legislative grace period that allows a party to seek release of the City's interest in the property. *Id.* It "does not and cannot perpetuate or revive interests that have already been terminated pursuant to Administrative Code § D17–12.0(b)." *Id.* Although the debtor's application for release of the property was filed on February 25, 1986, over 21 months after the deed conveying title to the City was recorded, it was timely filed within the Discretionary Release period as provided for by the City

Code. Nevertheless, the Board of Estimate unanimously denied the debtor's application.

The reliance of the debtor and State Management on *Whiting Pools* is misplaced. In *Whiting Pools* the Supreme Court addressed the issue whether § 542(a) of the Code authorized a bankruptcy court to subject the Internal Revenue Service ("IRS") to a turnover order where the IRS had seized property of the debtor pre-petition in satisfaction of a tax lien. *Whiting Pools* held that notwithstanding the fact that the IRS had possession of the property, it constituted property of the debtor's estate, and therefore was subject to turnover. *Whiting Pools, supra*, 462 U.S. at 209, 103 S.Ct. at 2315. *Whiting Pools* is inapplicable to the present case because the legal and equitable interests retained by the respective parties in that case were completely different from those interests retained by the City and Debtor in the property in the instant case. In *Whiting Pools*, the IRS seized personal property of the debtor in order to satisfy a lien outstanding for unpaid Federal Unemployment Insurance Contribution Act taxes and Federal taxes withheld from its employees. *Id.* at 200, 103 S.Ct. at 2311. The property was seized pursuant to the levy and distraint provisions of the Internal Revenue Code ("IRC") prior to the debtor's bankruptcy petition. *Id.* at 201, 103 S.Ct. at 2311. In analyzing the applicable provisions of the IRC, *see* 26 U.S.C. § 6301 *et seq.* (1985), the Supreme Court likened the property interest of the IRS to that of a private secured creditor. *Id.* at 210. The court accurately characterized the interest of the IRS in the seized property as a mere lien, and not ownership of the property. *Id.* at 210, 103 S.Ct. at 2316. The court contemplated that if the tax levy and seizure provision of the IRC had transferred actual ownership to the IRS, § 542(a) might not apply. *Id.* Thus, the *ratio decidendi* of the *Whiting Pools* holding turned upon a precise reading of the power of the IRC tax lien which allowed the IRS to seize the debtor's property and take possession without conveying legal title to the IRS.

*Compare* 26 U.S.C. §§ 6231, 6331, 6335(a), 6336(c) and 6349(b) *with* N.Y.C. Administrative Code § D17–12.0.

In light of the foregoing, the property subject to the contract is not property of the estate. The motion of the debtor and State Management to compel turnover must be denied. In view of the fact that this court did not have sufficient information at the time it issued the order dated December 27, 1985 which authorized the sale of the subject property by the debtor to State Management, and in view of the foregoing facts, that order is vacated, except to the extent it relates to Lot 43, which is still available for sale by the debtor.

SO ORDERED.