In the Matter of ANNIE MEADOWS, Respondent, v COMMIS-
SIONER, DIVISION OF REAL PROPERTY et al., Appellants.

Second Department, June 20, 1988

 

## APPEARANCES OF COUNSEL

*Peter L. Zimroth, Corporation Counsel (Fay Leoussis* and *Ingeborg B. Garfield* of counsel), for appellants.

*Wilfred A. Callender* for respondent.

## OPINION OF THE COURT

MANGANO, J.

Pursuant to Administrative Code of the City of New York § 11-424, an owner of property which has been acquired by the City of New York by an in rem tax foreclosure, may thereafter (1) apply to the city for release of the city's interest in the property and (2) obtain a release upon payment to the city, *inter alia,* of the amount of any "deficiency" (Administrative Code of City of New York § 11-424 [d] [3]), "within thirty days of the date on which a letter requesting [the] applicant to make such payment is mailed or delivered to the applicant" *(see,* Administrative Code of City of New York § 11-424 [f], [g]). The term "deficiency" is, in effect, defined in the Administrative Code of the City of New York as that sum which "may result to the city after all payments made by it for the repair, maintenance, and operation of the lands, real estate or real property shall have been charged or debited in the appropriate accounts of the city and all rents, license fees and other moneys collected by the city as a result of its operation of the said lands, real estate or real property shall have been credited in such accounts" (Administrative Code of City of New York § 11-424 [d] [3]). The question to be answered on this appeal is whether the delinquent taxpayer may commence a proceeding challenging the accuracy of the city's figures or demanding the production of the city's records with respect to the deficiency charges, without first paying the deficiency charges within the required 30-day period. The question must be answered in the negative.

I

Prior to May 17, 1983, the petitioner's husband owned a

parcel of real property located at 584 Georgia Avenue in Brooklyn. In May 1981, the City of New York commenced an in rem tax foreclosure action in the Supreme Court, Kings County, to foreclose on numerous tax delinquent parcels in Brooklyn. The instant parcel was included in the foreclosure action, because the petitioner's husband had failed to pay real estate taxes totaling more than $1,300 which had accrued since 1979. The petitioner's husband never answered or appeared in the in rem tax foreclosure action and a default judgment was subsequently entered. On May 17, 1983, the city acquired title to the instant parcel and, commencing on that date, it operated and managed the parcel. The petitioner's husband died on June 25, 1983.

On March 22, 1984, the petitioner, whose interest in the subject property arose "by reason of the death of a prior owner" (Administrative Code of City of New York § 11-424 [b]), filed an application for the release of the city's interest in the subject property pursuant to Administrative Code of the City of New York § 11-424. The application was timely since it was filed, as required by the Administrative Code of the City of New York, within two years from the date the city acquired title to the parcel (Administrative Code of City of New York § 11-424 [a]). However, the application was subject to the discretionary approval of the release by the Board of Estimate, since it had been filed more than four months after the date of the city's acquisition of the instant parcel on May 17, 1983 (Administrative Code of City of New York § 11-424 [g]). The Board of Estimate approved the petitioner's application. Pursuant to Administrative Code of the City of New York § 11-424 (f) and (g), the petitioner was eligible, at that point, to obtain a release of the property to her, upon her payment of the outstanding taxes, interest, penalties, and deficiency charges (see, Administrative Code of City of New York § 11-424 [d] [1], [2], [3]), "within thirty days of the date on which a letter requesting * * * such payment" was mailed or delivered to her (Administrative Code of City of New York § 11-424 [f], [g]). In accordance with the latter provision, the city sent a letter to the petitioner on April 28, 1986, advising her of the amounts due which had to be paid before a release of the property could be effectuated, and indicating to her that May 28, 1986, i.e., 30 days thereafter, was the deadline for the petitioner to tender payment. The letter dated April 28, 1986, informed the petitioner that she had to pay a total of $53,276.32, which consisted of the following items: $7,035.63 in

delinquent taxes, including interest, $396.79 in penalties and $45,843.90 representing deficiency charges for a period of three years during which the city operated and managed the property. The deficiency charges consisted of estimated expenses incurred by the city less all income received, and were based on an In Rem Redemptions Income-Deficiency Report dated March 14, 1986, prepared by the New York City Department of Housing Preservation and Development (hereinafter HPD). Thereafter, i.e., on May 6, 1986, the petitioner's attorney allegedly met with an employee of the HPD who submitted to the attorney those bills representing repairs and improvements made to the subject property during the city's operation and management thereof. On May 8, 1986, the petitioner and her attorney went to the subject property, and based on their observations, concluded that many of the alleged repairs had not been made. Thereafter, the petitioner requested a recomputation of the delinquency charges listed in HPD's report dated March 14, 1986. On May 22, 1986, the HPD sent a recomputed and updated In Rem Redemptions Income-Deficiency Report to the petitioner in connection with the subject property. As a result of the HPD's recomputation, the deficiency charges were recomputed at $36,269.95, i.e., $9,573.95 less than the deficiency charges listed on the prior In Rem Redemptions Income-Deficiency Report. The reduction in the deficiency charges was caused by the fact that the recomputation was based on actual, rather than estimated, gas and electricity charges incurred by the city during its three years of its operation and management of the subject property. The recomputed In Rem Redemptions Income-Deficiency Report, dated May 22, 1986, bore the following notation: "This is the correct amount due 5/28/86". On that same date, the petitioner's attorney allegedly (1) met with an employee in the Inspector General's office of the HPD and (2) filed a formal complaint disputing the accuracy of the figures listed in the HPD's In Rem Redemptions Income-Deficiency Report. The petitioner did not pay any of the charges by May 28, 1986. As a result, on May 29, 1986, the city mailed petitioner a letter, which was received on June 2, 1986, denying the petitioner's application for release of the foreclosed property due to her failure to pay the charges listed in the In Rem Redemptions Income-Deficiency Report.

On or about June 4, 1986, the petitioner commenced the instant proceeding, challenging the city's denial of her application for a release of the subject property. In her petition,

the petitioner alleged that the denial of her application to release the city's interest in the property, "while a complaint to the Inspector General was pending", was a "violation of lawful procedure and was arbitrary and capricious and an abuse of discretion". In her prayer for relief, the petitioner demanded that (1) the HPD submit for inspection "all bills paid for gas and electricity during the time of management of the premises", and (2) the city release its interest in the subject property. In a supporting affidavit, the petitioner's counsel argued that the figure of $21,440.66 for repair work and the figure of $23,609.89 for gas and electricity charges, which were listed on the In Rem Redemptions Income-Deficiency Report dated May 22, 1986, and which, when set off against the income from the property, helped form the total delinquency charges of $36,269.05, were "impossible to conceive" and bore "no resemblance to reality".

By notice of motion dated August 6, 1986, the city moved to dismiss the proceeding as a matter of law on the ground that the petitioner had failed to pay the tax arrearages and the deficiency charges within the requisite 30-day period, i.e., by May 28, 1986, pursuant to Administrative Code of the City of New York § 11-424 (f), (g). In opposition to the city's motion, the petitioner's attorney alleged that the city had the obligation to produce "all of the bills for gas and electricity paid during the time of its management of the property".

By order dated October 7, 1986, the Supreme Court, Kings County, (1) granted the petition to the extent of directing the HPD to submit to the petitioner for inspection "all bills paid for gas and electricity during the time of management" of the subject premises, and (2) denied the city's motion to dismiss the proceeding.

II

The petitioner's right to reacquire the subject property does not derive from a "continuing equitable interest" in the property, but by reason of the release provision in the Administrative Code of the City of New York (*Matter of Lewis v Schwartz,* 119 AD2d 116, 123; *see,* Administrative Code of City of New York § 11-424). Administrative Code of the City of New York § 11-424 therefore cannot be viewed as a redemption statute (*Matter of Lewis v Schwartz, supra*). Rather, it is a statute which permits "the reconveyance of property to those who formerly had an interest therein" (*Matter of Lewis v*

*Schwartz, supra,* at 123). Viewed within this perspective, section 11-424 is "purely the product of legislative grace" *(Matter of Lewis v Schwartz, supra,* at 124), and "reflects the Legislature's desire to afford those who have lost their property in in rem foreclosure proceedings a grace period for the property's reacquisition" *(Matter of Lewis v Schwartz, supra,* at 123). In order to obtain the benefits of this product of legislative grace, it was incumbent upon the petitioner to pay, *inter alia,* all deficiency charges "within thirty days" of the date on which a letter requesting her to make payment was mailed or delivered to her (Administrative Code of City of New York § 11-424 [f], [g]). Upon payment of all outstanding charges within the requisite 30-day period, the petitioner would have had the right to commence a proceeding challenging the accuracy of the city's figures *(see, Kaufman v City of New York,* 128 AD2d 592). However, in the instant case the petitioner failed to pay all outstanding charges within the requisite 30-day period.* Despite the petitioner's failure in this regard, she nevertheless argues that her petition can withstand the motion to dismiss, by virtue of her allegation that the appellants' figures with respect to the deficiency charges are inaccurate. We disagree. The petitioner's argument is belied by the express language of the Administrative Code of the City of New York which states that a discretionary release can be made by the city "providing", or "only where", the delinquent taxpayer pays the outstanding charges within the requisite 30-day period (Administrative Code of City of New York § 11-424 [f], [g]). In addition, the Administrative Code of the City of New York clearly states that the amount of the deficiency charges, as indicated by the city's letter, is "conclusive" upon the applicant (Administrative Code of City of New York § 11-424 [d] [3]).

Nor does the petitioner's allegation concerning the filing of a complaint with the Inspector General's office of HPD compel a different result. This allegation, even if true, did not relieve the petitioner of her obligation to comply with the conditions set forth in the Administrative Code of the City of New York

---

* On the instant appeal, the petitioner argues that the May 22, 1986, recomputation by the HPD of the deficiency charges triggered the running of a new 30-day period, i.e., until June 21, 1986, within which payment could be made. This argument, however, was not raised before the Supreme Court, Kings County, and has not been preserved for appellate review. In any event, this argument is without merit since petitioner never tendered any payment by June 21, 1986.

before a release of the city's interest in the subject property could be effectuated. Moreover, the city's letter dated April 22, 1986, clearly warned the petitioner, *inter alia,* that "NO CITY OFFICIAL OR EMPLOYEE IS EMPOWERED TO VARY THE STATUTORY CONDITIONS FOR RELEASE OF THE CITY'S INTEREST". Under these circumstances, the order appealed from must be reversed and the city's motion to dismiss the proceeding must be granted *(see also, Matter of Bruce v City of N. Y. Dept. of Gen. Servs.,* Sup Ct, Kings County, May 6, 1985, Bernstein, J.; *Matter of Ebanks v City of N. Y. Dept. of Gen. Servs.,* Sup Ct, Kings County, Dec. 26, 1985, Dowd, J.).

MOLLEN, P. J., BROWN and KUNZEMAN, JJ., concur.

Ordered that on the court's own motion, the appellants' notice of appeal is treated as an application for leave to appeal, that application is referred to Justice Mangano, and leave to appeal is granted by Justice Mangano (CPLR 5701 [b] [1]); and it is further,

Ordered that the order is reversed, on the law, with costs, the motion is granted, and the proceeding is dismissed on the merits.