JOYCE Y. HARTSFIELD, Plaintiff, v CITY OF NEW YORK, DIVISION OF REAL PROPERTY, Defendant.

In the Matter of FLORENCIO ARIAS, Individually and as President of 549 West 163rd Street Tenants Association, Appellants, v PETER ZIMROTH, as Corporation Counsel of the City of New York, et al., Respondents.

First Department, April 6, 1989

## APPEARANCES OF COUNSEL

*Lori L. Keitz* of counsel *(David W. Weschler* and *George R. Sommers* with her on the brief; attorneys), for appellants.

*Gary F. Marton* of counsel *(Francis F. Caputo* and *Robert F. Wayburn* with him on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for City of New York, respondent.

*Leonard S. Gordon* of counsel *(Harry A. Roth,* attorney), for Joyce Y. Hartsfield, respondent.

### OPINION OF THE COURT

SULLIVAN, J.

■ This appeal presents the issue of whether a Referee in a

mortgage foreclosure proceeding, appointed both to compute and to sell at public auction premises as to which the city had previously taken title in an in rem tax foreclosure proceeding, had the authority to apply, pursuant to Administrative Code of the City of New York § 11-424 (f), for a release of the city's interest in the premises. We find, *inter alia,* that since the Referee was an ineligible person, as defined in the Administrative Code, to seek such release, and, in any event, exceeded the powers of her appointment, the city's approval of the application should be annulled.

On June 9, 1982, the city brought an in rem proceeding to foreclose on tax-delinquent real estate in Manhattan. The subject premises, an owner-abandoned multiple unit dwelling, was included because it was subject to tens of thousands of dollars of delinquent real estate taxes and water and sewer charges, some of which dated back as far as 1976. No one interposed an answer or otherwise appeared in connection with the premises. Earlier, on June 29, 1981, the court had appointed a 7-A administrator to manage the building.

On December 18, 1984, a mortgage foreclosure action was initiated by one Euripides, to whom a former owner, 549 West 163rd Street Realty Corp., had assigned its purchase-money mortgage. Joyce Hartsfield, who had been appointed the Referee to compute the amount due upon the bond/note and mortgage, was on October 5, 1985 also appointed the Referee to sell the premises at a public auction.

Previously, on May 23, 1985, as the city prepared to move for judgment, the record owner, Bridgeland Equities, Inc., by Wolf Genuth, had entered into a statutory installment agreement with the city's Department of Finance to discharge the arrears on the premises. On June 25, 1980, however, Bridgeland's corporate charter had been forfeited and the corporation dissolved for nonpayment of franchise taxes. Bridgeland thereafter defaulted on the installment agreement, which was, as a result, canceled on or about September 10, 1986. The Corporation Counsel was notified to foreclose on the premises, and on September 24, 1986 the city obtained a judgment directing the Commissioner of Finance to execute a deed in fee simple absolute in its favor. The deed was executed on October 3, 1986.

The owner of record immediately prior to the city's vesting of title was Brynwell Management Corporation, to which Bridgeland, dissolved for over four years at the time, had

conveyed title. Genuth is the principal of both Bridgeland and Brynwell. On September 25, 1986, Hartsfield allegedly auctioned the premises and received a high bid of $92,000 from the assignee-mortgagee, Euripides. On November 17, 1986, Hartsfield applied, pursuant to Administrative Code § 11-424 (f), for a release of the city's interest in the premises. By letter dated March 31, 1987, the city notified Hartsfield that the application had been approved and that the city's interest in the premises would be released provided that $156,138.39, the payment mandated by Administrative Code § 11-424 (d), was made by April 30, 1987.

Earlier, around November 1986, South 4th Realty Co., which is also controlled by Genuth, submitted an application to the Department of Finance's Refunds and Adjustments Unit seeking to transfer to the unpaid June 1985 water and sewer charge a payment made in September 1985 that had been applied against charges that had come due in June 1980. That same month, Genuth appeared at the Department of Finance's Manhattan office to make a similar request on behalf of South 4th Realty. Apparently, the application was part of an effort to support an argument to be made at some future date that Bridgeland had not defaulted on the installment agreement, and that the tax foreclosure was based on the Department of Finance's carelessness. In any event, the application was not approved.

On April 20, 1987, Hartsfield commenced an action for injunctive relief and sought a temporary restraining order staying the expiration of the statutory 30-day period for payment of tax arrears, pending a determination of Genuth's and/or Bridgeland's claim that the Commissioner of Finance had erroneously determined that there had been a default in the installment agreement. In support of her application, Hartsfield submitted an affidavit by Euripides claiming that he had paid over $65,000 to keep all assessments current. The checks he submitted in support of his application, however, were signed by Genuth, and imprinted with "South 4th Realty Co.", the entity he controlled. Hartsfield, the Referee in the mortgage foreclosure proceeding, ostensibly commenced the lawsuit to be able to transfer the premises to the mortgagee, Euripides. When Hartsfield was unable to obtain a stay of the statutory period for payment, Genuth paid the $156,138.39 required.

Meanwhile, on April 24, 1987, a group of tenants commenced a CPLR article 78 proceeding challenging the city's

March 31, 1987 decision to approve Hartsfield's application for release of the city's title to the premises. On the city's motion, the article 78 was dismissed, and the city directed to release title to the premises. This appeal followed. We reverse.

By virtue of her status as a Referee in a mortgage foreclosure proceeding, Hartsfield was ineligible to seek release of the city's title to the premises. The law governing in rem tax foreclosure actions permits only a "party who had an interest in said property as either owner, mortgagee, lienor or encumbrancer at the time of the city's acquisition" to apply for a release of the city's interest in the subject property. (Administrative Code § 11-424 [a].) The application must be in writing and comply with disclosure provisions, including "a full description of the instrument from which the applicant's interest derives", and, moreover, be supported by a certified search of a title insurance company or like documentation. (Administrative Code § 11-424 [b], [c].) The applicant must pay all tax arrears and other costs and disbursements. (Administrative Code § 11-424 [f].) Before releasing title, the Corporation Counsel must approve the application "as to form, timeliness and eligibility of the applicant". (Administrative Code § 11-424 [f], [g].)

Hartsfield was ineligible because she was not an owner, mortgagee, lienor or encumbrancer of the premises, or, contrary to the motion court's finding, an agent of such a person. Her nexus to the premises derived solely from the orders of reference, which did not endow her with any such capacity. Nor could she act as an agent for an interested party, since a Referee is a court-appointed officer for the purposes specified in the order of reference. *(Woolf v Leicester Realty Co.,* 134 App Div 484.) A Referee may not act in excess of the authority so conferred. *(Feder Corp. v Bozkurtian,* 48 AD2d 701; *Korobkin v Chalek,* 13 Misc 2d 582, *affd* 7 AD2d 924.) Furthermore, even if Hartsfield could be considered an agent of the owner or mortgagee, it would be unavailing since section 11-424 (a) of the Administrative Code does not provide for application by an agent.

Nor did Hartsfield's application comply with the statutory disclosure provisions. It did not, as required by Administrative Code § 11-424 (b), include "a full description of the instrument from which the applicant's interest derives", namely, the order of reference authorizing her to compute the amount due upon the bond/note and mortgage, and the subsequent order of reference authorizing her to sell the premises

as a court-appointed officer at a public auction. These limitations on her authority as Referee should have been fully disclosed, and Hartsfield's failure to do so precluded the Corporation Counsel from performing his duty in determining the eligibility of the applicant prior to releasing title.

Moreover, Hartsfield's application was misleading. She submitted a "last owner's title search", misrepresenting that she was the "fee owner" of the premises immediately prior to the city's acquisition of title. A fee owner holds "an estate of inheritance without condition; an absolute estate in perpetuity and the largest possible estate a man can have." (Black's Law Dictionary 317 [abridged 5th ed 1983].) In view of Hartsfield's extremely limited role as a court-appointed officer, her representation that she acquired the rights of a "fee owner" of the premises was misleading. Brynwell, not Hartsfield, was the owner of record immediately prior to the city's vesting of title on October 3, 1986. Thus, Hartsfield's application failed to disclose fully the limitations on her authority as stated in the instrument from which her purported interest derived, namely, the two orders of reference.

Before title to the building could be released, $156,138.39 in tax arrears and other costs and disbursements, as demanded by the Corporation Counsel, had to be paid by an applicant who was eligible to make such payment. "Payment of tax arrearages * * * is not the first consideration. When a release application is made, the initial question is not one of payment but whether the applicant is eligible to make payment. Clearly, payment may not be received from an ineligible applicant." *(Matter of Lewis v Schwartz,* 119 AD2d 116, 122.) In the instant case, Hartsfield purportedly auctioned the premises and received a high bid of $92,000. Clearly she was not eligible to make a payment to the city of $156,138.39, which would have bankrupted the foreclosure estate by over $60,000, and also would have been in clear violation of the oath to "faithfully and fairly * * * do such acts * * * as the order [of reference] requires" (CPLR 4315).

■ Moreover, Hartsfield did not make the necessary payments to the city. Genuth, who controls South 4th Realty, did. The applicant, however, is required by law to make the payments "[Administrative Code § 11-424 (f)] expressly conditions the granting of the application on 'eligibility of the applicant and providing the *applicant has paid all amounts required to be paid*' * * *. This express direction in the statute as to the party by whom payment is to be made

cannot be held to be without significance". *(172 E. 122 St. Tenants Assn. v Schwarz,* 136 AD2d 370, 375; *see also, Matter of Lewis v Schwartz, supra;* Administrative Code § 11-424 [f].)

Finally, we note that Hartsfield was ineligible to seek release of the city's title on November 17, 1986 because her role as mortgage foreclosure Referee came to an end on September 24, 1986, when the city obtained a judgment awarding it an estate in fee simple absolute. As noted, the Commissioner of Finance duly executed a deed in fee simple absolute to the city on October 3, 1986. Hartsfield allegedly sought the city's release of title in order to convey it to Euripides, the purported purchaser at a public auction. By the time of the auction, however, the foreclosure parties no longer had any rights or interest in the property because, by operation of law, those rights were extinguished once the city obtained a judgment of foreclosure. *(See, 172 E. 122 St. Tenants Assn. v Schwarz, supra.)*

Accordingly, the order and judgment (one paper), of the Supreme Court, New York County (Edward H. Lehner, J.), entered January 5, 1988, which dismissed the article 78 petition, and directed the City of New York to release its interest in the premises known as 549 West 163rd Street, New York, New York, should be reversed, on the law, without costs or disbursements, the judgment vacated, and the petition granted to the extent of revesting title to the property in the city, which is directed to return the amounts paid in the in rem proceeding.

CARRO, MILONAS, ELLERIN and WALLACH, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on January 5, 1988, unanimously reversed, on the law, without costs and without disbursements, the judgment vacated, and the petition granted to the extent of revesting title to the property in the city, which is directed to return the amounts paid in the in rem proceedings.