■ In the Matter of HARLEM RESTORATION PROJECT, INC., Respondent, v CITY OF NEW YORK et al., Appellants.—Order, Supreme Court, New York County (Burton S. Sherman, J.), entered June 13, 1988, which granted the motion of respondents, the City of New York (City) and the Comptroller of the City of New York (Comptroller), for reargument, and upon reargument, recalled and vacated part of a prior order of that court, dated February 22, 1988, to the extent of dismissing that branch of the petition which sought to annul the respondent Comptroller's denial of the application of the petitioner, Harlem Restoration Project, Inc. (petitioner), to cancel real property taxes from the tax year 1978/1979, and adhered to the part of its prior order which directed a remand to the respondent Comptroller for reconsideration of his denial of petitioner's application for cancellation of real property taxes for the tax year 1979/1980, is unanimously reversed, on the law and the facts, to the extent appealed from the respondent Comptroller's determination that real property taxes are due for the tax year 1979/1980, is reinstated, petition is dismissed in its entirety, without costs.

Prior to 1978, American Bakeries Company (American) owned a parcel of property located at 461 West 125th Street and 426-458 West 126th Street in New York County. This property contains five four-story buildings.

After the property's taxable status was fixed on January 25, 1978 for the tax year 1978/1979, American donated the property to St. German of Alaska Eastern Orthodox Church (Church) in May 1978.

The Church held title to the property for almost two years. During that period, the property remained vacant, and the Church did not pay the real property taxes, water charges, and sewer rents. Furthermore, the Church did not apply for exemption from taxes for the years 1978/1979 and 1979/1980.

By deed dated January 15, 1980, the Church conveyed the property to the Harlem Restoration Project, Inc. (Harlem) for $5,000. Harlem is a not-for-profit corporation.

Subsequent to Harlem's acquisition of the property, it applied to the City Tax Commission for a real property tax exemption. Since the City claimed that taxes were due for the

periods when American and the Church owned the property, the City only granted Harlem an exemption for the period during which it owned the property.

On July 31, 1985, the City acquired title to the subject property, pursuant to an in rem foreclosure action, which was based on unpaid real property taxes for tax years 1978/1979 and 1979/1980, as well as outstanding water charges and sewer rents for those years.

Subsequently, in August 1985, Harlem timely applied to the City for release of the property, and requested the City to accept installment payments for the taxes due for the years 1978/1979 and 1979/1980. Thereafter, in September 1985, Harlem applied to the Comptroller for cancellation of the taxes for 1978/1979 and 1979/1980, and in April 1986, the Comptroller denied that application.

More than a year later, in May 1987, Harlem requested that the Comptroller reconsider his denial, mentioned *supra,* based upon the submission of additional evidence by Harlem. Thereafter, in July 1987, the Comptroller denied that request, and adhered to his original determination.

Following the Comptroller's refusal to cancel the unpaid taxes, on August 12, 1987, the City informed Harlem that, in accordance with Administrative Code of the City of New York § 11-424, for it to obtain a release of the property, Harlem must, within 30 days, either pay the entire amount of the taxes and other charges due, or submit the required payment for an installment agreement.

Harlem failed to either pay in full or make an installment payment to the City concerning the delinquent taxes and other unpaid charges by September 8, 1987, when the 30 days expired. Therefore, on September 9, 1987, the City notified Harlem that the City's interest in the property would not be released.

In response, on September 17, 1987, Harlem instituted, pursuant to CPLR article 78, a proceeding against the City and the Comptroller (respondents), which sought a judgment: (1) annulling respondent Comptroller's determination, which denied cancellation of real property taxes for the years 1978/ 1979 and 1979/1980; (2) annulling the decision of the respondent City's Department of General Services, Division of Real Property, which required the payment of back taxes as a condition precedent to the redemption of the property; and (3) revesting title in the petitioner. In their answer, respondents opposed the petition.

By order dated February 22, 1988, the IAS court, in sub-
stance, remanded to respondent Comptroller for reconsidera-
tion, upon a full record, the petitioner's application for cancel-
lation of the taxes, and directed that the Church be added as
an additional party.

Subsequently, respondents moved for reargument, and the
IAS court granted that motion. Upon reargument, by order
entered June 13, 1988, the IAS court, in substance: (1) recalled
and vacated part of its prior order of February 22, 1988, to the
extent of dismissing so much of the petition as sought the
annulment of the respondent Comptroller's determination
which denied petitioner's application to cancel real property
taxes for the tax year 1978/1979; and (2) adhered to that part
of its prior order which directed a remand to respondent
Comptroller for reconsideration of petitioner's application for
cancellation of real property taxes for the tax year 1979/1980.

A Justice of this court, by order dated September 8, 1988,
granted the respondents' motion for leave to appeal from so
much of the IAS order, entered June 13, 1988, as directed a
remand.

After our review of the record, we find that although
petitioner has had ample opportunity, it has failed to present
any evidence which indicates the Church used the property
for any religious or educational purpose during the tax year
1979/1980. Even if the Church had applied for a tax exemp-
tion *(see,* Real Property Tax Law § 420-a [1] [a]), it would not
have been entitled to one, since it did not use the property for
church purposes. It has been held that in order for a religious
institution to be entitled to such exemption, the property must
be "used exclusively for carrying out religious and educational
purposes (see *Matter of Genesee Hosp. v Wagner,* 47 AD2d 37,
affd 39 NY2d 863; *Matter of St. Luke's Hosp. v Boyland,* 12
NY2d 135)" *(Matter of Congregation Beth David v Assessor of
Town of Ramapo,* 96 AD2d 1099 [1983]).

Moreover, based on our examination of the record, since we
find that petitioner did not take advantage of the 30-day grace
period (Administrative Code § 11-424) after it received notifica-
tion from the City mentioned *supra,* to either pay in full or
arrange to make an installment payment to satisfy the delin-
quent taxes, the release of the property to the petitioner at
this late date is barred *(Matter of Meadows v Commissioner,
Div. of Real Prop.,* 139 AD2d 46, 51-52 [1988]).

In view of our analysis *supra,* we find the IAS court erred.

Accordingly, we reverse, reinstate the respondent Comptrol-

ler's determination that real property taxes are due for the tax year 1979/1980, and dismiss the petition in its entirety. Concur—Kupferman, J. P., Ross, Milonas, Rosenberger and Wallach, JJ.