OPINION OF THE COURT
 

 Alexander, J.
 

 The issue presented on this appeal is whether a corporation dissolved by proclamation of the Secretary of State (Tax Law § 203-a) may, consistent with the provisions of the Business Corporation Law that restrict the activities of dissolved corporations, apply under section 11-424 of the Administrative Code of the City of New York (former § D17-25.0) for the release of property it owned prior to dissolution but which was subsequently foreclosed in an in rem tax foreclosure action brought by the City of New York. We conclude that the remedy of release provided in the Administrative Code for parties who possessed an interest in foreclosed property at the time of its acquisition by the City is available to such a dissolved corporation so as to permit the reacquisition of property owned by it prior to dissolution.
 

 I
 

 172 East 122 Street (172 East) and 174 East 122 Street (174 East) are adjoining multiple dwellings that previously were owned by respondent P.R.F. Realty (PRF). It appears that PRF abandoned these buildings in October 1981. In June of the following year the New York City Finance Commissioner filed an in rem tax foreclosure action against these properties. PRF defaulted and a judgment of foreclosure in favor of the City was entered on July 31, 1985. In December of 1982, during the pendency of the in rem foreclosure proceedings but prior to entry of the judgment of foreclosure, PRF was dissolved by the Secretary of State for failure to pay corporate franchise taxes
 
 (see,
 
 Tax Law § 203-a).
 

 Within four months following the City’s foreclosure, PRF— by then a dissolved corporation — filed an application for release of the City’s interest in the foreclosed property pursuant to section 11-424 of the Administrative Code which authorizes the City to release its interest in property acquired by in rem tax foreclosure "on the application of any party who had an interest in said property as either owner, mortgagee, lienor or encumbrancer at the time of the city’s acquisition thereof’ (Administrative Code § 11-424 [a]). Where a release application is filed within four months from the date of foreclosure, the
 
 *345
 
 application "shall be granted providing the corporation counsel approves the application as to form, timeliness and
 
 eligibility
 
 of the applicant and providing the applicant has paid all [required] amounts” (§ 11-424 [f] [emphasis added]).
 

 On March 5, 1986, the Corporation Counsel conditionally approved PRF’s application pending the payment of $85,058.01 in real estate tax deficiencies and penalties by April 4, 1986. Before these conditions had been satisfied, PRF executed a quitclaim deed conveying the parcels to 420-172 East Associates (East Associates). The purchase price tendered to PRF included a check in the amount of $85,058.01 payable to the City of New York with which PRF made the required payment on April 4 to obtain release of the parcels. The Corporation Counsel then took the necessary steps to release the City’s interest in the properties and an order vacating the City’s title to the properties was formally entered in Supreme Court on April 17, 1986.
 

 Petitioners are the tenants associations of the subject buildings. The tenants at 172 East formed an association in 1981 to maintain the building after PRF abandoned it. One of their number was appointed administrator by the Housing Court
 
 (see,
 
 RPAPL art 7-A) and was made responsible for managing the building and collecting rents. At 174 East, the current tenants took occupancy after the former tenants were forced to leave because of a lack of heat and hot water and extensive structural damage to the building. In November 1985, the "Vesting Unit” of the Department of Housing Preservation and Development assumed management of the building and provided the current tenants with leases to their apartments.
 

 After the City foreclosed, petitioners sought to purchase their buildings under the Tenant Interim Lease Program, a program instituted by the City to assist tenants in the purchase and management of dilapidated and abandoned buildings acquired by the City through in rem tax foreclosure proceedings. While the applications were pending, however, the City approved the release of the properties to PRF and the foreclosure deed to the City was vacated. Petitioners then instituted this article 78 proceeding to vacate the release and to void the transfer of title from PRF to East Associates.
 

 Relying on
 
 Matter of Lewis v Schwartz
 
 (119 AD2d 116), Supreme Court granted the petition to the extent of declaring the transfer between PRF and East Associates void, vacating the approval of PRF’s release application, and revesting title
 
 *346
 
 to the buildings in the City. Consistent with its holding in
 
 Matter of Lewis,
 
 a divided Appellate Division affirmed. The court noted that a dissolved corporation is prohibited from carrying on any business "except for the purpose of winding up its affairs” (Business Corporation Law § 1005 [a] [1]) and thus possesses only limited power "to fulfill or discharge its contracts, collect its assets, sell its assets for cash at public or private sale, discharge or pay its liabilities, and do all other acts appropriate to liquidate its business” (Business Corporation Law § 1005 [a] [2]). The court concluded that upon completion of the in rem foreclosure proceedings title vested in the City and any property interest PRF had was extinguished, leaving it with no corporate asset to "sell” or "collect”. Additionally, the court determined that the release provision in the Administrative Code does not "perpetuate or revive property interests that have already been terminated” (136 AD2d 370, 374). The majority thus reasoned that PRF was "ineligible” to apply for release of its former property and that its application should have been denied.
 

 The dissenters concluded that
 
 Matter of Lewis
 
 was wrongly decided because it rested on an erroneous determination that property owned at the time of the City’s acquisition and as to which a party may properly seek release under the Administrative Code is not an "asset” within the meaning of the Business Corporation Law. The majority’s reasoning was rejected by the dissenters, who were of the view that the mandatory release provision in the code enabled PRF to collect its principal asset owned at the time of foreclosure and to sell it to East Associates for the purpose of discharging its outstanding tax liabilities. The dissenters determined that this sale was accomplished in connection with the liquidation of PRF’s business as expressly authorized by the Business Corporation Law.
 

 This appeal is before us as of right pursuant to CPLR 5601 (a). We now reverse and dismiss the petition.
 

 II
 

 At the outset, we reject respondents’ contention that petitioners lack standing to maintain this article 78 proceeding.
 
 *
 
 As indicated, petitioners are would-be purchasers of the
 
 *347
 
 foreclosed buildings under the Tenant Interim Lease Program. One of the purposes of section 11-424 clearly is to determine the ultimate ownership of the foreclosed property — if a release application is approved, the property is returned to the former owner but if such application is disapproved, the property remains with the City and may be disposed of pursuant to various City programs providing for the management and purchase of foreclosed properties. Thus, petitioners, as potential owners of the properties, arguably fall within the zone of interest of the statute. Additionally, petitioners have not only been affected as potential buyers, their interest, as tenants, in the future status of their homes also is at issue here. Moreover, respondents do not contend that there is any legislative intent to preclude review of the City’s decision in this case
 
 (see generally, Matter of City of New York v City Civ. Serv. Commn.,
 
 60 NY2d 436;
 
 Matter of Dairylea Coop. v Walkley,
 
 38 NY2d 6).
 

 ¡II
 

 We turn then to the issue of whether a corporation dissolved by proclamation pursuant to Tax Law § 203-a is "eligible” to seek release of its formerly owned property pursuant to section 11-424 of the Administrative Code. It is clear from the language of the code that a release application must be granted where it has been filed within four months from the date of foreclosure provided that the Corporation Counsel has approved the application "as to form, timeliness and eligibility” and the applicant has paid the required sums (Administrative Code § 11-424 [f]). It is the City’s contention that the Corporation Counsel’s interpretation of the eligibility requirement specified in section 11-424 (f) as referring exclusively to whether an applicant possessed an interest in the foreclosed property at the time of acquisition by the City is rational and that, since it is undisputed that PRF owned the buildings in question at the time of foreclosure, no further inquiry by the Corporation Counsel into "eligibility” was required. The majority at the Appellate Division held, however, that, at a minimum, the Corporation Counsel was required to review
 
 *348
 
 PRF’s release application in order to ensure that granting the relief requested would not violate other statutory mandates. That interpretation would require the Corporation Counsel in the present case to determine whether the provisions of the Business Corporation Law applicable to dissolved corporations rendered PRF ineligible to apply for release thereby requiring the denial of PRF’s application.
 

 Although the term "eligibility” is not defined in the Administrative Code, there appears to be no express requirement that the Corporation Counsel survey State and local laws to determine whether an applicant otherwise eligible by virtue of an interest in the property at the time of foreclosure, might be nonetheless precluded from applying for release of its former property. The requirements for release of foreclosed property enumerated in section 11-424 are that the applicant must have had an interest in the property "as either owner, mortgagee, lienor, or encumbrancer” at the time of the City’s foreclosure and that this interest must have been recorded (Administrative Code § 11-424 [a], [b]). When these requirements are satisfied, and the application together with the necessary documentation are filed within four months from the date of foreclosure, the application
 
 must
 
 be granted provided the Corporation Counsel otherwise approves the application "as to form, timeliness and eligibility” and the applicant pays all required amounts (Administrative Code § 11-424 [f]). Here, it is undisputed that PRF owned the buildings in question at the time of foreclosure and that its release application was otherwise valid and proper. Thus, applying the familiar standard of review that the "[interpretation of a statute by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute”
 
 (Matter of Moran Towing & Transp. Co. v New York State Tax Commn.,
 
 72 NY2d 166, 173), we conclude that the Corporation Counsel’s interpretation of "eligibility” under the statute and his approval of the application were neither arbitrary nor irrational merely because the application was not checked against the provisions of the Business Corporation Law pertaining to dissolved corporations. In any event, the determination of PRF’s eligibility and the approval of the release application in this case
 
 were
 
 entirely proper and in no way violated the provisions of the Business Corporation Law.
 

 Business Corporation Law § 1005 (a) (1) states that a dis
 
 *349
 
 solved corporation "shall carry on no business except for the purpose of winding up its affairs”. The statute defines "winding up” as the performance of acts directed toward the liquidation of the corporation, including the collection and sale of corporate assets (Business Corporation Law § 1005 [a] [2]). The majority at the Appellate Division concluded that by applying for release of its former property and arranging for the transfer of that property to East Associates, PRF violated the statute by carrying on new business unrelated to the collection or sale of existing assets. The court reasoned that PRF could not dispose of an asset it did not possess and that once title to the properties vested in the City those properties ceased to be corporate assets
 
 (see, Matter of Lewis v Schwartz,
 
 119 AD2d 116,
 
 supra).
 

 It is, of course, true that once the City foreclosed on the buildings it obtained an estate in fee simple absolute, thereby cutting off any property rights once held by PRF (Administrative Code § 11-412 [b]). The analysis does not end there, however. The City’s retention of title to the properties is expressly made subject to the provisions of section 11-424 which permit a former property owner to recover foreclosed property by filing a release application with the City (Administrative Code § 11-412 [b]). Thus, the release provision provided PRF with a remedy permitting it to recover those properties from the City.
 

 Business Corporation Law § 1006 (b) provides that "[t]he dissolution of a corporation shall not affect any remedy available to or against such corporation * * * for any right or claim existing * * * before such dissolution”. Thus, under this provision, PRF was entitled to pursue any remedy available to it in respect to the reacquisition of property it owned prior to its dissolution
 
 (cf., Independent Investor Protective League v Time, Inc.,
 
 50 NY2d 259, 264 [under Business Corporation Law § 1006 (b), "rights and remedies of the shareholders existing prior to dissolution are viewed as if the dissolution never occurred”]). PRF’s ability to reclaim its property does not depend on whether that property presently may be characterized as a corporate asset; it is sufficient for purposes of the Business Corporation Law that a remedy exists permitting PRF to recapture a property right it possessed prior to its dissolution. Administrative Code § 11-424 grants such a remedy.
 

 Finally, the challenge to the manner in which the back
 
 *350
 
 taxes were paid, i.e., by check of East Associates drawn to the City of New York as part of the consideration due PRF for the conveyance, is without merit. No provision of the Administrative Code expressly prohibits payment in this manner and allowing such payment comports with the essential purpose of the release provision — to enable the City to collect past due real estate taxes while relieving it of the burden of managing unwanted properties obtained through in rem foreclosure proceedings. As we conclude the petition must be dismissed, we need not address the contention of East Associates that it was wrongly denied a full evidentiary hearing by the trial court.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order reversed, etc.
 

 *
 

 Respondents PRF and East Associates also assert the equitable defense of laches, contending that petitioners were aware as early as January 30,
 
 *347
 
 1986 that PRF had applied for release but unreasonably waited until July to institute an article 78 proceeding. This contention is meritless. Approval of the release application was not given until April 8, 1986; the original notice of petition is dated July 18, 1986 — thus, the instant proceeding was brought well within the four-month limitations period provided in CPLR 217.