■ 502 WEST 135TH STREET TENANTS ASSOCIATION, Respondent, v PETER ZIMROTH, as Corporation Counsel of the City of New York, et al., Appellants.—Order and judgment (one paper), Supreme Court, New York County (Bruce McM. Wright, J.), entered December 22, 1988, which, *inter alia,* granted the CPLR article 78 petition to the extent of vacating respondent Corporation Counsel's approval of respondent 502 West 135th Street Corp.'s release application, voiding the transfer of the subject building, and revesting title to the subject building in the City of New York, unanimously reversed, on the law, and the petition dismissed, without costs.

We note, at the outset, that while this case raises serious questions of justice and equity, a reversal is mandated in view of the recent Court of Appeals decision on this matter, *Matter of 172 E. 122 St. Tenants Assn. v Schwarz* (73 NY2d 340 [1989], *revg* 136 AD2d 370 [1st Dept 1988]). The essential facts herein involved are undisputed. In June 1986, the Commissioner of Finance filed an in rem tax foreclosure action against the property located at 502 West 135th Street in New York County. Respondent 502 West 135th Street Corporation (the Corporation) was the owner of record of the subject property at that time. On April 23, 1987 the City of New York (City) secured a judgment of foreclosure of the subject building and obtained title to the property, which deed was recorded the next day. The subject building had been under the management of a RPAPL article 7-A administrator for a period of some seven years;[1] this terminated when the City foreclosed *(see,* Administrative Code of City of New York § 11-412 [b]) and the Department of Housing Preservation and Development (HPD) formally assumed management of the property.

After foreclosure by the City, on or about May 5, 1987, the tenants of the building, petitioner herein, 502 West 135th Street Tenants Association (the Tenants Association), filed an application with HPD for the Tenant Interim Lease Program (TIL); this program had been enacted by the City to "promote

---

1. The Corporation purchased the building, in 1980, from one Zoe Alexander, who had permitted the building to descend into a deplorable state. At no time after this did the Corporation ever attempt to assume management of the building, or to replace the 7-A administrator; neither did the Corporation attempt to remedy the numerous dangerous and unhealthy conditions existing in the building.

and assist the purchase and management by the tenants of deteriorated and abandoned buildings acquired by the city in 'In Rem' proceedings." *(172 E. 122 St. Tenants Assn. v Schwarz,* 136 AD2d, *supra,* at 372, citing Board of Estimate Resolution, cal. No. 178, Mar. 22, 1979.) Under the TIL, an association of tenants residing in a City-owned building are trained in building management by HPD, which also finances repairs. When the tenants establish that they can successfully manage the building, the City sells it to the tenants as a cooperative.

On August 24, 1987, pursuant to Administrative Code § 11-424, the Corporation filed an application with the Department of General Services' Division of Real Property (DRP) seeking release of the City's interest in the property. Administrative Code § 11-424 (f) provides that an application to release property acquired by the City in rem, made within four months after the date of the City's acquisition, "shall be granted providing the corporation counsel approves the application as to form, timeliness and *eligibility of the applicant* and providing the applicant has paid all amounts required to be paid by subdivision d of this section within thirty days of the date on which a letter requesting applicant to make such payment is mailed or delivered to the applicant" (emphasis added). After the four-month "mandatory release period" *(Izquierdo v Board of Estimate,* 141 AD2d 337, 338 [1st Dept 1988]; *Matter of Lewis v Schwartz,* 119 AD2d 116, 121 [1st Dept 1986])* con- cludes, a 20-month period commences during which the Board of Estimate can, in its discretion, approve the release of the property. *(See,* Administrative Code § 11-424 [a], [g].) The parties agree that the Corporation filed its application on the very last day that the mandatory provision was applicable. Accordingly, HPD, by letter dated September 11, 1987, advised the Tenants Association that a release application had been filed by the owners to redeem the building and that considera- tion of its application for the TIL program was suspended.

Shortly thereafter, on September 18, 1987, respondent Cor- poration Counsel notified DRP that the Corporation's applica- tion met the criteria discussed heretofore in that it was timely, in proper form, and sufficiently established the Corpo- ration's interest in the property sought to be released. The Corporation Counsel did not, in this regard, address the ques- tions of the Corporation's neglect and abandonment; rather its determination of eligibility was based upon the fact that the Corporation was the record owner of the building.

By letter dated November 10, 1987, DRP advised the Corpo-

ration that its application for release had been approved, subject to payment within 30 days of delinquent and penalty charges in the amount of $149,457.40.[2] On December 10, 1987, DRP notified the Corporation Counsel that the Corporation had paid the outstanding charges in full.[3] The Corporation Counsel then duly filed a request with the court seeking removal of the building from the foreclosure roll; an order to vacate the foreclosure deed was signed on January 3, 1988.

On April 26, 1988, the Tenants Association commenced the instant article 78 proceeding seeking to vacate the release of the City's interest in the building and to revest title in the City. The Tenants Association contended that the Corporation Counsel's determination of the Corporation's eligibility was erroneous because the Corporation had, in effect, abandoned the building and had never attempted to correct dangerous and unsanitary conditions. The Tenants Association also claimed that the Corporation Counsel committed an error "in failing to demand any payment from 502 Corp. to cover the value of the tenants' labor and out-of-pocket costs incurred in their efforts to alleviate and remedy the innumerable health and safety hazards and to maintain the building in a habitable state * * * which were necessary because of 502 Corp.'s abandonment and complete neglect of the property."

The lamentable history of abandonment and neglect of the subject building by the ownership of the Corporation, also known as Andonis and Maria Morfesis and their associates (the Morfesis Network), which has owned the property since 1980, is a matter of record and warrants more than a passing comment in this regard. We note that the Morfesis Network is an infamous slumlord which owns, manages, or is otherwise responsible for numerous residential apartment buildings in financially distressed areas in upper Manhattan, which it has intentionally neglected and abandoned, causing untold suffering to literally thousands of tenants. Indeed, as the IAS court correctly noted, "the City has sued Andonis and Maria Morfesis and their associates, in this court, seeking the abatement of hazardous conditions in [no less than] 15 buildings in upper Manhattan that defendants either own or manage." There were a staggering 2,300 Housing Maintenance Code violations in the buildings involved in the City's lawsuit; while the

---

2. A mere $1,030 of this amount constituted the entire penalty charge.

3. The amount paid by the Corporation did not include any compensation for the tenants' labor and the expenses the tenants incurred in restoring and maintaining the building.

subject building was not included in the suit, it appears that this was because the City held title to the building at the time that action was brought in 1987, and therefore, could not be included.

Indeed, the record reflects that only as a result of the tenants' substantial efforts have heat and hot water been restored, the roof been repaired, fixtures and sinks been repaired or replaced, window guards installed, insect and vermin infestation controlled and the building been insured for fire and liability. The record also shows that these tenants, who are not particularly wealthy, have invested not only their time, but nearly $20,000 of their own money.

The IAS court, in a thoughtful and comprehensive decision, rendered a decision granting the petition to the extent of vacating the Corporation Counsel's release and transfer of the building and revesting title in the City. The IAS court held that the Corporation Counsel, in considering an applicant's eligibility, should consider factors other than ownership interest in the property; this was contrary to the Corporation Counsel's contention that it performs a purely ministerial function when reviewing applications under the four-month mandatory release provision.

The IAS court, at the time it issued its decision, properly applied the law as set forth in our decision in *172 E. 122 St. Tenants Assn. v Schwarz* (136 AD2d 370, *supra*). However, the Court of Appeals reversed that case four months after the order herein appealed from was filed. *(See,* 73 NY2d 340, *supra.)* We are, therefore, constrained to apply the law as interpreted by that court.

As the Court of Appeals observed, "the term 'eligibility' is not defined in the Administrative Code". *(Matter of 172 E. 122 St. Tenants Assn. v Schwarz,* 73 NY2d, *supra,* at 348.) However, that court upheld the Corporation Counsel's interpretation of eligibility under Administrative Code § 11-424 (f) because "it [was] undisputed that [the landlord] owned the buildings in question at the time of foreclosure"; thus, the court concluded that the landlord, whose release application was otherwise "valid and proper" had satisfied the "eligibility" requirement, without requiring the Corporation Counsel to engage in any further inquiry or survey of State and local laws. *(Supra,* at 348.)[4] Because this case is on all fours with

---

4. Curiously, the Court of Appeals did not refer to the landlord's abandonment and neglect of the building, which resulted in severe hardship to the residents, nor did it pass comment upon the return of the property by the City to a notoriously neglectful former owner.

*172 E. 122 St. Tenants Assn.,* we must apply the law, consistent with that decision, and reverse. In this regard, we hope that the relief from the inequities and injustices which must therefore ensue will result in legislative action and prompt remedial enactment, as members of this court have previously suggested. *(172 E. 122 St. Tenants Assn. v Schwarz,* 136 AD2d, *supra,* at 380 [Sandler, J., dissenting].) Concur—Sullivan, J. P., Carro, Rosenberger, Kassal and Ellerin, JJ.