■ In the Matter of DIANE DEJESUS et al., Respondents, v RICHARD ROBERTS, as Commissioner of the Department of Housing Preservation and Development of the City of New York, et al., Appellants. [746 NYS2d 1] —Order, Supreme Court, New York County (Elliott Wilk, J.), entered March 9, 2001, which, in this CPLR article 78 proceeding seeking an order, inter alia, directing respondents to place the subject building into the Department of Housing Preservation and Development of the City of New York's (HPD) Tenant Interim Lease (TIL) program instead of selling it as part of HPD's Asset Sales program, granted the petition to the extent of vacating the denial of petitioners' application to place the building in the TIL program and remanded the matter to HPD with the direction to consider the application on the merits, unanimously reversed, on the law, without costs or disbursements, the petition denied, respondents' determination reinstated and confirmed, and the proceeding dismissed. Leave granted, sua sponte, to respondents to appeal from said order.

Petitioners are tenants in a City-owned building, acquired in 1987 tax foreclosure proceedings, located at 230 East 95th Street in Manhattan. They bring this proceeding to prevent HPD from selling the building "as is" in its Asset Sales program, and, instead, to direct HPD to rehabilitate the building with public funds and convey it to the tenants as part of the agency's TIL program. Under the TIL program, HPD would lease the building to a tenants' association, which would collect the rents and manage the building, while HPD would pay the cost to "replace or upgrade major systems" and, eventually, at a price of $250 per apartment, convey the building to the tenants as a cooperative. The Asset Sales program, on the other hand, is designed to return City-owned buildings to private ownership. The buildings so selected are "located within strong marketable areas." The purchaser assumes all responsibility

for financing and rehabilitation; no City funds are used. The purchaser must offer the tenants two-year leases at existing HPD rents, which are thereafter adjusted pursuant to applicable rent regulation laws. As HPD's brochure explains, HPD provides a window period where only the tenants may purchase; thereafter, HPD solicits bids from all potential purchasers, including the tenants.

According to HPD's answer, a building's assignment to a particular program is a discretionary decision, made after "evaluat[ing] a number of factors." If a building is marketable in its "as is" condition, it is sold in the Asset Sales program, thereby conserving scarce City financial resources for the substantial number of City-owned buildings in need of major rehabilitation. TIL, on the other hand, is used for "buildings which are otherwise unmarketable * * *, often located in economically depressed areas."

On February 25, 1998, HPD gave petitioners written notice that the building was to be sold in the Asset Sales program. They were given an exclusive right to purchase at an "asking price" of $255,000 and advised that they had until June 30, 1998 to make an acceptable offer. After that date, the tenants were advised, they could make an offer but it would be "considered competitively with all other submitted offers." At a March 12, 1998 meeting called by HPD, its representative informed the tenants that the building was ineligible for TIL because it was in a "prominent neighborhood with great opportunities." As petitioners acknowledge, they left the meeting with the understanding that "[w]e must buy or be bought." Despite their preference that the building be placed in the TIL program, petitioners made several failed attempts to purchase it, submitting offers of $92,970 and, later, meeting the $255,000 demand price. In that regard, HPD attempted to assist petitioners, removing the building from a pending solicitation for purchase offers so as to give the tenants another opportunity to purchase it and twice extending the deadline for the tenants to arrange financing.

When the tenants could not obtain the necessary financing, HPD put the building up for sale in November 1999. In January 2000, the tenants wrote to their community board, with a copy to HPD, and "renewed their request to be placed in the TIL program," acknowledging that in February 1998 they were told they were no longer eligible. HPD wrote to the tenants on February 15, 2000, observing that they had received written notice in February 1998 that the building would be sold in the Asset Sales program. The letter summarized the tenants' failed

attempts to purchase the building and concluded by reiterating that HPD had "programmed" the building for Asset Sales.

This article 78 proceeding, commenced in March 2000, over two years after HPD advised the tenants that the building would be sold in the Asset Sales program, alleged that HPD's February 2000 determination to reject their TIL application was "arbitrary and capricious, violative of [petitioners'] due process rights and against public policy." Included in their prayer for relief was a request for a declaration to that effect and an order directing HPD to transfer the building to the TIL program. HPD cross-moved to dismiss the petition as barred by the four-month statute of limitations provided in CPLR 217 (1).

The IAS court denied the motion and, after HPD answered, granted the petition to the extent of vacating the February 15, 2000 "administrative determination" and remanding the matter to HPD for "further consideration of the merits of [p]etitioners' TIL application." In rejecting HPD's argument that the limitations period began on February 25, 1998, when petitioners received notice of HPD's decision to dispose of the building through the Asset Sales program, the court found that HPD's February 15, 2000 letter was the first notice that HPD had "formally rejected" petitioners' application to participate in the TIL program. On the merits, the court found that HPD's brochures describing the Asset Sales and TIL programs were "an impermissible attempt to circumvent the clear mandate of CAPA [City Administrative Procedure Act (NY City Charter)] § 1043" and that HPD had to promulgate rules in compliance with CAPA. Absent specific rules, the court held, the deadline of acceptance in any program was "too vague to be meaningful." The court also found that HPD rules were also needed to address the question of future rent increases. We reverse.

At the outset, we note that the court clearly erred in denying the cross motion to dismiss the proceeding as time barred. HPD's decision to place the building in the Asset Sales program was communicated to petitioners in February 1998, more than two years before the commencement of this proceeding. Petitioners' January 2000 letter to the community board, with a copy to HPD, seeking a transfer to the TIL program was no more than a request for reconsideration and did not recommence the running of the four-month statute of limitations. In determining *"what* actions" are being challenged (*Matter of Young v Board of Trustees of Vil. of Blasdell*, 89 NY2d 846, 848), we find that the administrative action under attack and by which petitioners were aggrieved is HPD's February 1998

decision to sell the building in the Asset Sales program. That decision meant that HPD had charted its course and, rather than undertake to repair the building and convey it to the tenants, it was going to sell the building for private rehabilitation. As this record shows, the tenants were quite aware of this in February and March of 1998. There was no ambiguity in HPD's determination. From a procedural standpoint, however, the June 2, 2000 order denying the motion to dismiss on untimeliness grounds was never appealed. In view of HPD's failure to seek leave to appeal from that order, the issue may not be considered. Nor does the March 9, 2001 order on appeal bring up that order for review.*

As to the merits, the IAS court erred in holding that HPD's process for placing buildings in Asset Sales or TIL had to be set forth in rules formally adopted pursuant to CAPA (NY City Charter §§ 1041-1047). The rulemaking process is mandated when an agency establishes precepts that remove its discretion by dictating specific results in particular circumstances. "[O]nly a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers constitutes a rule or regulation" that must be formally adopted. (*Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health,* 66 NY2d 948, 951.) Rules are not required for "ad hoc decision making based on individual facts and circumstances" (*Matter of Alca Indus. v Delaney,* 92 NY2d 775, 778), or for "interpretive statements and statements of general policy that are merely explanatory and have no legal effect" (*Childs v Bane,* 194 AD2d 221, 228, *appeal dismissed* 83 NY2d 846, *lv denied* 83 NY2d 760). Here, the process for deciding whether a City-owned building should be centrally managed or placed in an alternative management program, such as Asset Sales or TIL, is broadly discretionary. Many of the determinative factors are subjective or imprecise. In any event, the time requirement that was the basis of HPD's rejection of petitioners' January 2000 request for the building's transfer to TIL is stated in an adopted rule (28 RCNY 21-03 [a] [1]), which provides, "Any City-owned building may apply to any DAMP [Division of Alternative Management Programs] program, including the [TIL] Program, at any time prior to acceptance in any other

---

* Indeed, the March 9, 2001 order remanding the matter for further consideration is not a judgment finally disposing of the proceedings under CPLR 5701 (a) (1) and is not appealable as of right (CPLR 5701 [b] [1]). We, however, sua sponte, grant leave to appeal that order and consider the matter on the merits.

DAMP program." Thus, the agency's February 2000 rejection of petitioners' renewed attempt to have the building placed in the TIL program was proper.

Nor was the IAS court correct that there is an HPD-created mandate that future rents in all buildings be "affordable" and that fulfillment of that mandate could not be assessed without further rules that would enable a court to determine if future rents in a conveyed building will be regulated. The regulation cited by the IAS court, 28 RCNY 21-02 (a), is merely a broad statement of agency goals, which does not create an enforceable obligation to preserve future rents at some level of "affordability" after the conveyance of a City-owned building to private ownership. In any event, whether future rents in a conveyed building will be subject to rent regulation is a question that can be resolved by recourse to existing rent laws without adoption of additional rules by HPD. (*See, generally, Matter of General Elec. Co. v New York State Dept. of Labor*, 76 NY2d 946, *affg on op at* 154 AD2d 117, 120-121.) Concur—Buckley, J.P., Sullivan, Lerner and Friedman, JJ.