Gregory **REYES**, Jacquelin Gonzales, Juan Pagan, Remery Camacho, Byron Deacensoa, Madeline R. Valentin, Eugenia Alicia, Plaintiffs,

v.

Sandra **ERICKSON**, Clay Cluster Corp., Erickson Property Management, Inc., Sandra Erickson Real Estate, Inc., Sandra Erickson Agency, Inc., Sandra Erickson Management, Neighborhood Partnership Housing Development Fund Company, Inc., City of New York/Department of Housing, Preservation and Development, Jerilyn Perine, John Warren, Anne–Marie Hendrickson, Wendell B. Walters, Albert Valez, Eric Johnson, James Gardella, the Enterprise Foundation, Inc., the Council of the City of New York, Victor Robles, Gifford Miller, Melinda R. Katz, New York City Housing Partnership Inc. Defendant.

No. 02 Civ. 4406(SHS).

United States District Court, S.D. New York.

Jan. 3, 2003.

Howard Gotbetter, New York, NY, for Gregory Reyes, Jacquelin Gonzalez, Juan Pagan, Remery Camacho, Byron Deacensoa, Madeline R. Valentin, Eugenia Aliciea.

Michael L. Goldman, Goldman & Rio, New York, NY, for Sandra Erickson, Clay Custer Corp. Erickson Property Management, Inc, Sandra Erickson Real Estate Inc., Sandra Erickson Agency, Inc., Sandra Erickson Management.

## OPINION AND ORDER

STEIN, District Judge.

This action arises out of a dispute concerning the manner in which the New York City Department of Housing, Preservation, and Development ("HPD") administered its Neighborhood Entrepreneurs Program ("NEP") with respect to a cluster of buildings on Clay Avenue in the Bronx, New York ("the Clay Avenue buildings"). Plaintiffs are seven rent-paying Latino tenants of those buildings, which were transferred by HPD to a "neighborhood entrepreneur"—defendant Sandra Erickson—pursuant to NEP in July 2000. Plaintiffs allege that because of their Latino heritage and because of their language barriers and educational limitations, they were discriminated against and unfairly denied an opportunity to become owners of the buildings pursuant to a city program that permits tenants to manage, and if successful, eventually purchase their building as a low-income cooperative. (Am. Compl. ¶¶ 1–8, 45) ("Compl.").

Plaintiffs bring this action against 21 city and private defendants pursuant to 42 U.S.C. §§ 1981 and 1983 and the Housing and Community Development Act (HCDA), 42 U.S.C. § 5309 and several of its implementing regulations, 24 C.F.R. §§ 6.1 and 91.1. Plaintiffs also assert state law claims pursuant to the New York State Human Rights Law and the Administrative Code and Charter of the City of New York. Defendants now move to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, and pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim for relief. As set forth below, those motions are granted in their entirety because

(1) this Court lacks subject matter jurisdiction over the tenants' claims pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 5309, and 24 C.F.R. §§ 6.1 and 91.1; (2) the allegation pursuant to 42 U.S.C. § 1981 fails to state a claim for relief; and (3) this Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## BACKGROUND

NEP is a program that enables neighborhood-based private property managers—known as "neighborhood entrepreneurs"—to manage and subsequently own clusters of occupied and vacant city-owned buildings.[1] HPD and the Neighborhood Partnership Housing Development Fund Company, Inc. ("NPHDFC"), a not-for-profit corporation, assist in obtaining financing for the rehabilitation and permanent ownership of clusters of buildings and provide technical assistance to owners and managers.

When a building enters NEP, the city leases it to NPHDFC. During and after the lease period, a neighborhood entrepreneur based in the community rehabilitates and manages the building pursuant to a management and development agreement with the NPHDFC. *See* 28 RCNY § 35–07. If successful in these efforts, the neighborhood entrepreneur may ultimately become the long term owner of the buildings. *See* 28 RCNY § 35–08.

NEP has an opt-out provision pursuant to which the tenants of a building selected for NEP may apply to have the building opt out of NEP and instead enter HPD's Tenant Interim Lease ("TIL") program, which gives tenants the opportunity to manage and, if successful, eventually purchase their building as a low-income coop-

erative.[2] *See* 28 RCNY § 35–04. For a building to opt out of NEP and enter the TIL program, residential tenants of record in a building must form a tenant association, submit an application to HPD, and meet minimum rent collection and other requirements. *See* 28 RCNY § 34–03(b). If the application is accepted, the tenant association then enters into a temporary leasing arrangement with the city. During the period of the lease, the tenant association must work to improve the building and learn to manage it. *See* 28 RCNY § 34–04.

HPD has broad discretionary powers over whether a tenant association that is participating in the TIL program may continue to do so. The HPD regulations governing NEP provide numerous conditions, the violation of which would allow HPD to terminate the Tenant Interim Lease, including a Tenant Association's failure to comply with management standards, to pay bills or collect rent in a timely fashion, or if "for any other reason, it is no longer in the best interests of the City to keep the Building in the program." 28 RCNY § 34–07.

In this action, plaintiff tenants allege that the Clay Avenue buildings entered NEP in late 1999 or early 2000 but that plaintiffs were given no notice of this action or information about the TIL program until the summer of 2000. (Compl.¶ 22.) Defendant Sandra Erickson was appointed the neighborhood entrepreneur for the Clay Avenue buildings in July 2000. (Compl.¶ 23.) Plaintiffs allege that the city failed to give them proper notice of two required public hearings regarding the eventual sale and disposition of the buildings to the Erickson defendants and that city defendants were unresponsive to

---

1. The HPD regulations governing NEP are set forth in Chapter 35 of Title 28 of the Rules of the City of New York ("RCNY").

2. The HPD regulations governing the TIL program are set forth in Chapter 34 of Title 28 of the RCNY.

plaintiffs' inquiries about NEP and the possibility of their participation in the TIL program. (Compl.¶¶ 26–36.)

## DISCUSSION

### 1. Legal Standards

An action must be dismissed for lack of subject matter jurisdiction pursuant to Fed R. Civ. P. 12(b)(1) when the trial court lacks the power to adjudicate the case. A plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000).

In reviewing a motion to dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept as true the factual allegations in the complaint. *See Weinstein v. Albright*, 261 F.3d 127, 131 (2d Cir.2001); *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir.1995). Dismissal of the complaint is proper only when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The review is limited, and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985).

### 2. The Section 1983 Claims Must Be Dismissed for Lack of Subject Matter Jurisdiction

■ The United States Court of Appeals for the Second Circuit has held that a district court lacks subject matter jurisdiction to hear a plaintiff's 42 U.S.C. § 1983 claim when the plaintiff has failed to pursue the alleged underlying constitutional violation in a New York state court proceeding brought pursuant to Article 78 of the New York Civil Practice Law and Rules ("C.P.L.R."). *See Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881–82 (2d Cir.1996). This rule applies to those claims that are appropriate for an Article 78 proceeding and the allegations are that state agencies have engaged in random and unauthorized acts. The rule does not apply when plaintiffs allege that statutory and administrative procedures that were properly followed are themselves unconstitutional. *See John Gil Constr., Inc. v. Riverso*, 72 F.Supp.2d 242, 251 n. 13 (S.D.N.Y.1999) (*discussing Hellenic*, 101 F.3d 877).

In this action, plaintiffs do not challenge the constitutionality of the underlying procedures governing NEP and the TIL program. Instead, they contend that municipal defendants' decisions to place the buildings at issue into NEP and not to assist plaintiffs in acquiring one of the buildings pursuant to a tenant management program was arbitrary and unauthorized. For instance, plaintiffs allege that: HPD made contradictory statements in a document about the identity of a building's ultimate owner (Compl.¶ 25); a mayoral hearing was scheduled without proper notice (Compl.¶ 32); and HPD officials were unresponsive to plaintiffs' requests for information about the TIL program. (Compl.¶¶ 26–27.)

Article 78 of the New York C.P.L.R., an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, provides both a hearing and a

means of redress for petitioners—such as plaintiffs in this action—who seek to challenge municipal decisions pursuant to NEP and the TIL program. *See, e.g., DeJesus v. Roberts*, 296 A.D.2d 307, 746 N.Y.S.2d 1 (1st Dep't 2002); *Johnson v. City of New York*, 192 A.D.2d 352, 596 N.Y.S.2d 33 (1st Dep't 1993); *502 West 135th Street Tenants Ass'n v. Zimroth*, 160 A.D.2d 453, 554 N.Y.S.2d 127 (1st Dep't 1990). "[A] petitioner in an Article 78 proceeding ... is permitted to submit ... affidavits and other written proof [of his or her claim], and where a triable issue of fact is raised, the petitioner may obtain a trial." *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 202 (2d Cir. 1996). Furthermore, constitutional issues, such as the due process and equal protection issues in this action, can be decided in Article 78 proceedings. *See Christ the King Reg. High Sch. v. Culvert*, 815 F.2d 219, 224–25 (2d Cir.1987).

Plaintiffs cannot salvage their Section 1983 claims by invoking the general rule that Section 1983 permits plaintiffs with federal or constitutional claims to sue in federal court without first exhausting state judicial or administrative remedies. *Hellenic*, 101 F.3d at 881 (*citing Kraebel v. New York City Dep't of Hous. Pres. and Dev.*, 959 F.2d 395, 404 (2d Cir.1992)). The Second Circuit has explicitly held that there is no available Section 1983 action when there was an adequate state postdeprivation procedure, such as an Article 78 proceeding, to remedy an alleged deprivation of due process. *Hellenic*, 101 F.3d at 882 (citing *Zinermon v. Burch*, 494 U.S. 113, 132, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)); *Hudson v. Palmer*, 468 U.S. 517, 531, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

Moreover, plaintiffs cannot bring a federal Section 1983 action simply because Article 78's four-month statute of limitations has now expired. *Hellenic*, 101 F.3d at 881. "Where, as here, Article 78 gave ... a meaningful opportunity to challenge [the municipal or state action] ..., [plaintiffs] [were] not deprived of due process simply because [they] failed to avail [themselves] of the opportunity." *Id.* (*quoting Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir.1984)).

Accordingly, this Court does not have subject matter jurisdiction over plaintiffs' Section 1983 claims and they are therefore dismissed.

### 3. There Are No Private Rights of Action Pursuant to 42 U.S.C. § 5309 and Its Implementing Regulations

■ Plaintiffs assert violations of the nondiscrimination provisions of the Housing and Community Development Act, 42 U.S.C. § 5309 and 24 C.F.R., §§ 6.1 and 91.1. However, this Court lacks subject matter jurisdiction over these claims because these provisions do not create private rights of action.

In determining whether a statute or regulation contains a private cause of action, "the ultimate issue is whether Congress intended to create a private cause of action." *California v. Sierra Club*, 451 U.S. 287, 293, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981) (citations omitted). The court may infer a private right of action from a federal statute that does not expressly create one only if the statute's language, structure, and legislative history reveal Congress' intent to create a private right of action. *See Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988).

Courts in the Southern District of New York have already determined that 42 U.S.C. § 5309 does not create a private right of action. *See People's Hous. Dev. Corp. v. City of Poughkeepsie*, 425 F.Supp.

482, 491 (S.D.N.Y.1976). In *People's Housing Development Corp.*, the district court explained that:

> [T]he plain language of [42 U.S.C. § 5309] speaks only of the procedures and remedies which the Secretary [of the Department of Housing and Urban Development] may pursue. Although these prescriptions do not necessarily preclude private causes of action, the court may presume, in the absence of any evidence to the contrary, that Congress did to some degree consider the enforcement of terms and conditions of the Act, and obviously felt that the administrative agency should have the major, if not the exclusive, responsibility for insuring compliance.

In a carefully considered opinion, the United States Court of Appeals for the First Circuit also rejected the suggestion that 42 U.S.C. § 5309 provides a private right of action. *Latinos Unidos De Chelsea En Accion (Lucha) v. Sec'y of Hous. and Urban Dev.*, 799 F.2d 774 (1st Cir. 1986). The First Circuit examined Congress' intent pursuant to the Supreme Court's analysis in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) and also considered the legislative history and statutory scheme of the HCDA as a whole. It concluded that "Congress did not intend to create a mini-Civil Rights law, with its own private right of action, within [42 U.S.C. § 5309]," *id.* at 794, but rather intended that the Secretary of HUD would enforce the nondiscrimination provisions of Section 5309. *Id.* The court wrote as follows:

> We thus suspect that Congress expected that Titles VI and VIII would provide the primary obligations with regard to nondiscrimination, and that the main purpose of [42 U.S.C. § 5309] was the practical one of specifying HUD's role, under the HCDA, in enforcing the re-quirement that federal fund recipients not discriminate. We note, moreover, that denying a private right of action under HCDA's nondiscrimination provision does little to limit an individual's ability to challenge discriminatory practices ... Titles VI and VIII may still be used to challenge any action of discrimination by recipients of HCDA funds. *Id.*

Because 42 U.S.C. § 5309 does not create a private right of action, this Court does not have subject matter jurisdiction over that claim and it is therefore dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

It follows logically from the determination above that there can be no private right of action in 24 C.F.R. § 6.1 when the regulation's very purpose is to "implement the provisions of [42 U.S.C. § 5309]." 24 C.F.R., § 6.1. In *Alexander v. Sandoval*, 532 U.S. 275, 291, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), the Supreme Court wrote that:

> "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.... [I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself."

In short, an implementing regulation cannot create a private right of action where the statutory provision it implements does not do so.

Similarly, there is no private right of action pursuant to 24 C.F.R. § 91.1, which outlines the overall goals of the community planning and development programs governed by the HCDA. This regulation provides guidance to HUD as to how to administer its community planning and development programs. There is "no impli-

cation of an intent to confer rights on a particular class of persons." *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981).

Therefore, the 24 C.F.R. §§ 6.1 and 91.1 claims must be dismissed pursuant to Fed. R.Civ.P. 12(b)(1) because they do not create private rights of action.

### 4. *The Section 1981 Claim Fails to State a Claim for Relief*

■ Plaintiffs contend that the defendants violated 42 U.S.C. § 1981 by depriving them of their rights to enter into contracts to acquire ownership of their buildings pursuant to the TIL program (Compl.¶ 47.) Specifically, the tenants allege that the "ethnic background of plaintiffs and their language barriers and educational deficiencies allowed defendant[s] to evade and ignore obligations to plaintiffs." (Compl.¶ 45.)

Section 1981 states that "All persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, ... as is enjoyed by white citizens." The purpose of 42 U.S.C. § 1981 is "to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination because of their ancestry or ethnic characteristics." *Saint Francis Coll. v. Al–Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). The statute's prohibitions apply to private and state actors. *Id.* at 609, 107 S.Ct. 2022.

However, to fall within the purview of Section 1981, a defendant's actions must have been intentionally and purposefully discriminatory, and the plaintiff's race or ethnicity must have been the motivating factor behind the defendant's discriminatory acts. *See Albert v. Carovano,* 851 F.2d 561, 571 (2d Cir.1988) (en banc) ("essential to an action under Section 1981 are allega-

tions that the defendant's acts were purposefully discriminatory and racially motivated") (citations omitted). To establish a claim pursuant to Section 1981, a plaintiff must allege specific facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) there was an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e. the making and enforcing of contracts). *See, Lauture v. Int'l Bus. Machs. Corp.,* 216 F.3d 258, 261 (2d Cir.2000).

In this action, the tenants have failed to allege specific facts sufficient to support an inference that defendants intentionally discriminated against them on the basis of their race or Latino ethnicity. For plaintiffs' Section 1981 claim to withstand dismissal, "the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint." *Yusuf v. Vassar College,* 827 F.Supp. 952, 955 (citation omitted), *aff'd in part, rev'd in part on other grounds,* 35 F.3d 709 (2d Cir.1994). Moreover, "naked assertion[s] by plaintiff[s] that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race [are] too conclusory." *Hardin v. Meridien Foods,* 2001 WL 1150344 at *8, No. 98 Civ. 2268 (S.D.N.Y. Sep. 27, 2001) (*quoting Yusuf,* 827 F.Supp. at 955–56) (citation omitted); *see also Albert,* 851 F.2d at 562 ("naked allegation" that defendants selectively enforced college rules against plaintiffs because they were black or Latino is "too conclusory to survive a motion to dismiss").

The complaint lacks specific factual allegations to support a reasonable inference that plaintiffs were denied an opportunity to participate in the TIL program because

of discrimination based on race or ethnicity. In their complaint, plaintiffs allege facts supporting an inference that NEP was managed ineffectively with respect to that part of the program that requires informing tenants about the various transactions involving their buildings. For instance, plaintiffs allege that a public hearing was improperly scheduled and that city defendants were not responsive to plaintiffs' requests for certain information. As noted above, such grievances would have been well-suited for a hearing in a New York state court Article 78 proceeding, where challenges to municipal actions pursuant to NEP and the TIL program are routinely heard. *See, DeJesus,* 296 A.D.2d 307, 746 N.Y.S.2d 1; *Johnson,* 192 A.D.2d 352, 596 N.Y.S.2d 33; *Zimroth,* 160 A.D.2d 453, 554 N.Y.S.2d 127.

However, with respect to the required elements of a Section 1981 claim, plaintiffs offer no specific facts suggesting that defendants' failure to abide by certain procedures was motivated by racial discrimination. Instead, at the end of the complaint, plaintiffs offer the conclusory assertion that "[t]he ethnic backgrounds of plaintiffs and their language barriers and educational deficiencies allowed defendant[s] to evade and ignore obligations to plaintiffs and ignore due process." (Compl.¶ 45.) But what plaintiffs' language barriers might have "allowed" is different from what defendants actually did, and plaintiffs allege no facts suggesting that defendants acted out of racial or ethnic animus to exploit plaintiffs' alleged vulnerabilities.

Plaintiffs also assert that "the acts, omissions and actions of defendants deprived plaintiffs of the opportunity to obtain the same benefits as English-speaking all-white better-educated persons, namely to own property under the NEP TIL program." (Compl.47.) However, the tenants offer no facts to suggest that similarly situated white tenants had greater opportunities with the TIL program or that plaintiffs had been the victims of deliberately discriminatory treatment supporting an inference of racial or ethnic discrimination.

A "complaint consisting [only of] naked assertions, and setting forth no facts upon which a Court could find a violation of the Civil Rights Act, fails to state a claim under 12(b)(6)." *Yusuf,* 35 F.3d at 713. Therefore, plaintiffs' Section 1981 claim is dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

**5.** *The State Law Claims*

The remaining claims for relief in plaintiffs' complaint are New York state law claims over which this Court declines to exercise supplemental jurisdiction. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The remaining state law claims are therefore dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

### *CONCLUSION*

Because (1) plaintiffs failed to pursue the constitutional claims underlying their Section 1983 claims in a New York state court Article 78 proceeding; (2) the HCDA and HUD regulations pursuant to which plaintiffs seek to bring their claims do not create private rights of action; (3) plaintiffs fail to offer sufficient facts to support an inference that defendants intentionally discriminated against them on the basis of race or ethnicity; and (4) the Court declines to accept supplemental jurisdiction over the state law claims, defendants' motions to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) are granted in their entirety.