INDIGO SECURED HIGH INCOME NOTE, LTD., Respondent, v HCI SECURED MEDICAL RECEIVABLES SPECIAL PURPOSE CORPORATION et al., Appellants, et al., Defendant. [34 NYS3d 444]—

Judgment, Supreme Court, New York County (O. Peter Sherwood, J.), entered February 27, 2015, which, to the extent appealed from as limited by the briefs, awarded plaintiff the total sum of $42,564,205.29 as against defendants Steven Nitsberg (Nitsberg) and Health Capital Investors, Inc. (Health Capital), unanimously affirmed, with costs. Appeals from orders, same court and Justice, both entered February 20, 2015, which, to the extent appealed from, granted plaintiff partial summary judgment on the first count of its first amended complaint as against Nitsberg and Health Capital, and denied Nitsberg's motion to dismiss that count, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

The motion court correctly determined that defendants Nitsberg and Health Capital are liable for the obligation of defendant HCI Secured Medical Receivables Special Purpose Corporation (NY) (HCI-NY) to make payments due to plaintiff under a settlement agreement (SA) and accompanying promissory notes. It is undisputed that Health Capital is the sole owner, and Nitsberg is the president and sole officer and director, of HCI-NY. Further, Nitsberg executed the SA and the notes in his capacity as president of HCI-NY almost two years after that entity was dissolved by proclamation pursuant to the Tax Law. Owners and officers of a corporation that is involuntarily dissolved under the Tax Law are individually liable for the debts of the corporation undertaken while dissolved (*see Sunquest Enters., Inc. v Zar*, 115 AD3d 486 [1st Dept 2014]; *Benfield Elec. Supply Corp. v C & L El. Controls, Inc.*, 58 AD3d 423, 423-424 [1st Dept 2009]; *Pennsylvania Bldg. Co. v Schaub*, 14 AD3d 365 [1st Dept 2005]).

We reject defendants Nitsberg and Health Capital's argument that plaintiff waived any claims based on HCI-NY's dissolution because it was aware when it entered into the SA that HCI-NY had been dissolved. In the SA, defendants clearly and unambiguously "represent[ed] and warrant[ed]" that HCI-NY is "duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization." Moreover, the SA is the best evidence of the parties' understanding and should be enforced according to its terms (*Ashwood Capital, Inc. v OTG Mgt., Inc.*, 99 AD3d 1, 7 [1st Dept 2012]), especially in view of the SA's valid merger clause. Moreover, there is insufficient evidence that plaintiff was aware of the dissolution at the time the parties entered into the SA.

We also reject the argument of defendants Nitsberg and Health Capital that they should not be held liable for HCI-NY's obligations under the SA and notes because those instruments were entered into as part of HCI-NY's postdissolution "wind up," during which HCI-NY enjoyed "de facto" corporate status. When HCI-NY was dissolved prior to entering into the SA and notes, it had no remaining assets or liabilities. Under the SA and Notes, however, it assumed about $31 million in new obligations. Further, under a management services agreement, HCI-NY agreed to pay a monthly management fee for a prospective 10-year term. HCI-NY's assumption of these obligations are not "acts directed toward [its] liquidation" (*Matter of 172 E. 122 St. Tenants Assn. v Schwarz*, 73 NY2d 340, 349 [1989]; Business Corporation Law § 1005 [a]), and, therefore, do not shield defendants Nitsberg and Health Capital from liability for HCI-NY's obligations to plaintiff (*see Pennsylvania Bldg. Co. v Schaub*, 14 AD3d 365, 366 [1st Dept 2005]).

We have considered defendants Nitsberg and Health Capital's remaining contentions and find them unavailing. Concur— Tom, J.P., Friedman, Richter, Kapnick and Gesmer, JJ.